**Leo Alexander JONES,
Petitioner–Appellant,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Corrections, Respondent–Appellee.**

No. 89–3772.

United States Court of Appeals, Eleventh Circuit.

April 3, 1991.

Billy H. Nolas, Office of Capital Collateral Representative, Gail E. Anderson, Tallahassee, Fla., for petitioner-appellant.

Mark Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, FAY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Leo Alexander Jones ("Jones"), a prisoner awaiting execution on

Florida's death row, appeals from the district court's denial of his petition for a writ of habeas corpus. For the reasons stated below, we affirm the district court's decision to deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

In the early morning hours of May 23, 1981, Officer Thomas J. Szafranski, a Sheriff's Deputy in Jacksonville Florida, had concluded his police business in the vicinity of Davis and 6th Streets in Jacksonville. While attempting to leave the area, a bullet entered his patrol car and killed him. The shot was traced to a vacant apartment on the ground floor of a nearby building. A search of Jones' upstairs apartment in that building revealed a cache of weapons, one of which, a .30–.30 Winchester Marlin rifle, was marked with Jones' fingerprints and contained a spent shell casing consistent with the bullet that killed Officer Szafranski. According to testimony adduced at trial, during the same time frame that Szafranski was shot, Jones went out the back door of his apartment with rifle in hand, fired a shot, and returned to the apartment still holding the rifle. The police arrested Jones a few hours later.

After his arrest, Jones signed a statement in which he confessed to shooting Szafranski from the downstairs vacant apartment. Jones told another officer that he was tired of the police hassling him, that the police were not the only ones who had guns, and that he was going to shoot a "___ pig." [1]

A jury convicted Jones of first degree murder on October 2, 1981. After hearing the evidence relevant to sentencing, the same jury recommended that Jones be put to death. At a November 6, 1981 sentencing hearing, the trial judge followed the jury's recommendation. The conviction and sentence were affirmed on direct appeal to the Florida Supreme Court. *See Jones v. State,* 440 So.2d 570 (Fla.1983). That court also denied a subsequent petition for state habeas relief primarily alleg-

ing ineffectiveness of counsel. *See Jones v. Wainwright,* 473 So.2d 1244 (Fla.1985).

Jones next filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850. The trial court denied the motion after holding an evidentiary hearing on the ineffectiveness of counsel claim. The Florida Supreme Court affirmed. *See Jones v. State,* 528 So.2d 1171 (Fla.1988). Yet another petition for state habeas relief was subsequently denied. *See Jones v. Dugger,* 533 So.2d 290 (Fla.1988). Jones then filed the instant federal habeas action pursuant to 28 U.S.C. § 2254. After hearing oral argument, the district court denied relief without holding an evidentiary hearing.

## II. DISCUSSION

### A. *The Booth Claim*

Appellant's first argument is that the sentencing judge and jury improperly relied on "victim impact evidence" in reaching the decision to impose the death penalty. Information about the victim was contained in the presentence investigation report and the judge's sentencing order. In addition, Jones argues that the prosecutor presented information regarding the murder's impact on the community to the sentencing jury through argument and a witness, Sheriff Carson. Essentially, Sheriff Carson's testimony described the impact that Officer Szafranski's death had on Jacksonville law enforcement personnel. The prosecutor argued in part that the killing of a police officer was an attack on a symbol of law and order in our society. In *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the Supreme Court held that "victim impact" evidence is inadmissible in the penalty phase of a capital case because of its propensity to inflame the jury and to shift the focus of the proceeding away from the defendant as an individual and the circumstances of the crime.

We need not address the merits of Jones' *Booth* argument because this claim is pro-

---

1. Additional facts will be presented later in this opinion as they are relevant to the issues.

cedurally barred.[2] *See Jones v. Dugger,* 533 So.2d 290, 292 (Fla.1988) (express statement that the *Booth* claim is procedurally barred). Despite the Florida Supreme Court's express statement that it considered Jones' *Booth* claim to be procedurally barred, Jones argues that there was no procedural default for two reasons. First, Jones argues that, contrary to the state court's conclusion, the *Booth* claim was fairly raised at trial and on direct appeal. Second, Jones asserts that the Florida Supreme Court's invocation of the bar in his case should not be honored by this court because the state court has not consistently applied its own procedural default rules to *Booth* claims. We find both of these arguments to be without merit.

To support his first argument, Jones points to a supplemental brief filed in the Florida Supreme Court on direct appeal. Jones contends that the supplemental brief raised the argument that both the jury's and the judge's decisions were tainted by improper victim impact evidence. After carefully reviewing the supplemental brief from the direct appeal and the other arguments made there, however, we cannot agree. In the supplemental brief, Jones argued that the trial court erroneously considered the victim's status as a police officer as a nonstatutory aggravating factor. The entire argument, in fact, was directed toward the issue of whether the fact that Jones killed a police officer was relevant to the statutory aggravating factor of hindering or disrupting law enforcement, *see* Fla. Code § 921.141(5)(g), or other statutory aggravating circumstances. That argument did not fairly present the *Booth* issue argued on this appeal.

Jones' second argument is that the Florida Supreme Court does not consistently hold *Booth* claims to be procedurally defaulted. It is true that this court has held that "federal review of constitutional claims [will not be precluded] where the procedural requirement has been novel or

sporadically applied." *Spencer v. Kemp,* 781 F.2d 1458, 1470 (11th Cir.1986). However, we do not find this to be the case here.

To support his argument, Jones relies heavily on *Jackson v. Dugger,* 547 So.2d 1197 (Fla.1989). In *Jackson,* the Florida Supreme Court heard the petitioner's *Booth* claim on the merits despite argument from the state that the claim was procedurally barred. However, *Jackson* is easily distinguished from the instant case. In *Jackson,* the court expressly stated that the *Booth* claim was raised both at trial and on direct appeal. *Id.* at 1199. Therefore, Jones' second argument rests on his first argument, *i.e.,* that he raised his *Booth* claim despite the Florida Supreme Court's holding otherwise in *Jones v. Dugger,* 533 So.2d at 292. We have already rejected that argument above. Therefore, we hold that Jones' *Booth* claim is procedurally barred.

■ Jones could overcome the procedural default, however, by showing cause for the default and resulting prejudice. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Alternatively, Jones could overcome the procedural bar by showing that the failure of the federal courts to hear the claim on the merits would result in a fundamental miscarriage of justice. *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649; *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

■ However, Jones does not argue either of the above exceptions to the procedural bar. Rather, Jones rests his argument that his *Booth* claim should be heard on the merits solely on the contention that we have already rejected—that there has been no procedural default. We decline to address the exceptions to the procedural default rule in the absence of any argu-

---

**2.** Some of the evidence and argument was appropriate because of its relevance to the aggravating circumstance relating to disrupting and hindering the enforcement of the laws. Fla. Code § 921.141(5)(g). *See infra* § D.2. Some

may not have been, including the eulogy to the officer which was included at the end of the sentencing judge's order. However, the claim is procedurally barred.

ment on appeal regarding their applicability.[3] Therefore, we decline to address Jones' *Booth* arguments on the merits because of the procedural bar.[4]

## B. *The Confrontation Clause Claim*

■ Jones next argues that the trial judge improperly restricted cross-examination during the guilt phase in violation of the Confrontation Clause.[5] Jones contends that the judge impermissibly precluded essential cross-examination of a prosecution witness, Bobby Lee Hammond. Hammond testified at trial that he was present in Jones' apartment the night of the murder and that, around the time of the shooting, he saw Jones leave the back door of the apartment with rifle in hand, heard a single shot, and then saw Jones return to the apartment with the rifle. Hammond had given a substantially consistent statement to the police after being arrested along with Jones. However, at the suppression hearing prior to Jones' trial, Hammond testified, inconsistently with his trial testimony, that he had not seen Jones with a gun, and explained his prior statement to the police by stating that he had initially told the police that he knew nothing about the shooting, but that after being threatened and beaten by the police, he had given the story to the police incriminating Jones.

At trial, the trial judge permitted Jones' attorney to cross-examine Hammond to bring out Hammond's testimony at the suppression hearing which was inconsistent with his trial testimony incriminating Jones. However, the trial judge refused to permit cross-examination to bring out Hammond's post-arrest statement to the police (consistent with his trial testimony) or the alleged origin thereof (i.e., the threat and beating). The trial judge's rationale for

excluding the cross-examination was that it went beyond the scope of the direct examination. The judge reasoned that the direct examination had covered the events only up until the time that the police arrived at the door of Jones' apartment and that anything that happened thereafter, i.e., the alleged threats and beatings, went beyond the scope of the direct.

Although we doubt that the trial judge's ruling was correct, we conclude that the ruling did not violate Jones' rights under the Confrontation Clause. The trial judge generally has discretionary authority to restrict the scope of cross-examination, provided that the restriction does not violate the Confrontation Clause. *Greene v. Wainwright*, 634 F.2d 272, 275 (5th Cir. 1981).[6] In addition, a trial judge has broad discretion over the mode and order of interrogating witnesses and presenting evidence. Cf. Fed.R.Evid. 611(a). Significantly, the trial judge made it clear to counsel that he could call Hammond as his own witness and thereby get the evidence before the jury. *See Jones v. State*, 440 So.2d at 576 (holding on direct appeal that Jones had the opportunity to present the evidence). At a subsequent evidentiary hearing, counsel explained that he did not do so because he had already made the point of Hammond's prior inconsistent statement and he considered Hammond to be totally unreliable and did not know what he might say. *See infra* note 8.

■ Under these circumstances where it is clear counsel could have presented the evidence had he so desired, we cannot conclude that Jones has been prevented from confronting his accusers; rather, the trial judge merely exercised control over the order of presentation of the evidence. *See Hale v. United States*, 435 F.2d 737, 752 n.

---

3. Moreover, we find no support in the record for demonstration of the prejudice prong of the cause and prejudice standard or the fundamental miscarriage of justice standard.

4. Because we resolve Jones' *Booth* claim on the basis of the procedural default doctrine, we do not address whether *Booth* would apply retroactively to a criminal defendant convicted before *Booth* was announced.

5. The Sixth Amendment provides, in pertinent part:

 In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

6. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

22 (5th Cir.1970), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971); *United States v. Buchanan*, 500 F.2d 398, 399 (5th Cir.1974). Moreover, counsel's tactical decision not to call Hammond as a defense witness [7] indicates his evaluation that continued examination would not have been helpful. For the foregoing reasons, we conclude that the trial judge's ruling did not rise to the level of a Confrontation Clause violation.[8]

### C. *Jones' Confession*

1. Whether Jones' Confession was Obtained in Violation of his Sixth Amendment Right to Counsel

■ Jones argues that his confession was obtained in violation of his Sixth Amendment right to counsel. First, Jones contends that he asserted his right to counsel and the police did not cease the interrogation as required by *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Of course, the success of this claim turns on whether Jones asserted his right to counsel during the interrogation. In his brief, Jones states that "[t]here is no question here but that Leo Jones invoked his right to counsel prior to the interrogation at issue." Brief of Appellant at 134 n. 39. However, Jones points to no evidence that confirms the truth of this statement. Moreover, our own review of the record does not confirm Jones' naked assertion that he requested counsel during the interrogation.

Uncontradicted testimony at the suppression hearing indicates that Jones did not request an attorney before signing the confession. *See* Transcript of Suppression Hearing at 321. In addition, also at the suppression hearing, the following dialogue occurred between the court and Jones' counsel, Mr. Fallin:

> THE COURT: In reading your memorandum you state that the defendant requested counsel numerous times.
> MR. FALLIN: Yes, sir. I'm abandoning that point since [Jones] did not testify. I'll abandon that point.

*Id.* at 427. This colloquy indicates that the claim that Jones had invoked his right to counsel was not particularly strong and was abandoned.[9] Under these circumstances, and the absence of any proffer of evidence that Jones asserted his right to counsel,[10] we conclude that Jones' rights under *Edwards* and *Minnick* were not violated.

■ Second, Jones argues that his right to counsel was violated because his family had retained counsel who tried to contact Jones during the interrogation but the police did not tell Jones that counsel was trying to contact him. This argument is squarely foreclosed by *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In *Moran*, the Court held that the

---

**7.** The trial judge granted Jones' request for Hammond to be kept available so that he could be called later as a defense witness. Trial Transcript, Vol. V, at 969.

**8.** We also reject Jones' argument that his trial attorney's failure to call Hammond on direct or to remove his objection to Hammond as a court witness constituted ineffective assistance of counsel. At an evidentiary hearing on the ineffective assistance of counsel claim held in the state Rule 3.850 proceeding, Jones' trial counsel was questioned regarding his decision not to call Hammond as a witness. Counsel explained that, despite telling the jury that Hammond would be called in his opening statement, he did not call Hammond because he viewed Hammond as totally unreliable. Transcript of Rule 3.850 Proceeding, Volume V, at 262–63. Counsel explained that he had already cross-examined Hammond regarding inconsistent state-

ments made at the suppression hearing and that he did not want to risk putting Hammond on the stand again because "I didn't know what else he might say." *Id.* We conclude that these tactical reasons for not calling Hammond as a defense witness do not fall below the level of a reasonably competent attorney under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**9.** Jones does not allege ineffective assistance of counsel with respect to this issue.

**10.** Although the district court did not hold an evidentiary hearing, such a proceeding was unnecessary because the state court's findings of fact are fairly supported by the record. In addition, none of the grounds for holding a federal evidentiary hearing are present. *See* 28 U.S.C. § 2254(d).

failure of the police to inform the defendant of an attorney's efforts to contact him during interrogation did not violate either his right to counsel or his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Moran*, as in the instant case, the attorney attempted to contact the defendant soon after arrest and before the onset of formal adversary judicial proceedings "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Moran*, 106 S.Ct. at 1145 (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984)). The Court rejected the argument that "[t]he right to noninterference with an attorney's dealings with a criminal suspect ... arises the moment that the relationship is formed, or, at the very least, once the defendant is placed in custodial interrogation." *Moran*, 106 S.Ct. at 1145. Therefore, we are bound to reject Jones' argument regarding his right to counsel.

#### 2. Fifth Amendment Claims

Jones argues that the police did not stop interrogating him after he asserted his right to silence. Jones also contends that the confession that he signed was not the product of a voluntary and knowing waiver of his *Miranda* rights. We reject these arguments.

■■■■ Jones' first argument is dependent on whether he asserted his right to remain silent. This issue was thoroughly investigated at the hearing on Jones' motion to suppress before trial. Jones points to the testimony of Detective Eason as evidence that the interrogation did not cease after Jones asserted his right to remain silent. We find nothing in the record of that proceeding to support this allegation. The record indicates that the detectives read Jones his *Miranda* rights and that Jones said that he understood them and that "he didn't have to sign anything." Transcript of Suppression Hearing at 324. A refusal to sign a written waiver form does not conclusively indicate that the suspect wishes to remain silent. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755,

60 L.Ed.2d 286 (1979). The state court's finding that Jones did not assert his right to remain silent is fairly supported by the record. *See* 28 U.S.C. § 2254(d). Therefore, we reject Jones' argument that the police continued the interrogation after he asserted his right to remain silent.

■■■■ Furthermore, the record indicates that Jones signed the confession after Eason wrote it out. Although the state court's finding that the confession was signed voluntarily is not entitled to a presumption of correctness, *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), no new proffer of evidence suggests anything to the contrary or supports Jones' allegations of police coercion and brutality. We are unable to grant relief based on mere naked allegations of such police wrongdoing. Therefore, we conclude that Jones' confession was not involuntarily made or obtained in violation of *Miranda*.

### D. *The Ineffectiveness of Counsel Claims*

#### 1. The Guilt Phase

■■■■ Jones argues that his attorney's failure to call two witnesses at the guilt phase constituted ineffectiveness of counsel. The two witnesses, Spivey and Anderson, would allegedly have testified that they heard shots fired from a vacant lot rather than from the direction of Jones' apartment building. Initially, we note that Jones' counsel called three other witnesses who testified that the shots did not come from the direction of Jones' apartment building. Counsel testified that, in his judgment, these witnesses were more credible than Spivey and Anderson. Rule 3.850 Hearing Transcript at 224. Furthermore, counsel also explained that in the course of investigating the case he personally visited the addresses of Spivey and Anderson that were listed in the police report on several occasions but was unable to locate either witness. *Id.* at 220–22. These facts are fairly supported by the record and do not show that Jones' counsel was deficient under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We therefore reject

Jones' argument with regard to counsel's failure to call the two witnesses.[11]

### 2. The Penalty Phase

■ With regard to his attorney's performance at the sentencing phase of the trial, Jones first argues that counsel was ineffective in advising him to plead guilty to a felony two weeks prior to trial. Jones actually pled *nolo contendere* to the offense of battery on a law enforcement officer and was sentenced to five years in prison. The plea to this offense supplied an additional aggravating factor under Florida law. Fla.Code § 921.141(5)(b).

At the hearing held in connection with Jones' state Rule 3.850 motion, Jones' trial counsel explained his decision to advise Jones to plead guilty to the battery. Counsel testified that at the time of the plea, the battery case was set for trial. Counsel attempted to postpone that trial but was unsuccessful. Thus, the battery charge would have been resolved prior to the capital murder trial in any event.[12] Counsel testified that the state's battery case against Jones was very strong and that he did not "believe that we had a reasonable chance of winning at all." Rule 3.850 Hearing Transcript at 288–89. Furthermore, counsel stated that he discussed all of these decisions with Jones. There is no evidence that the plea was involuntary. In light of these circumstances, which we find are fairly supported by the record, we conclude that counsel's advice with regard to the guilty plea was not unreasonable.

■ Jones next argues that his attorney was ineffective for failing "to present ample, readily available mental health mitigating evidence." Brief of Appellant at 117. At the Rule 3.850 hearing, Dr. Miller testified that although Jones was otherwise competent, Jones had a "paranoid personality with dissociation features." Rule 3.850 Hearing Transcript at 143. Dr. Miller also testified, however, that presenting this information to the jury might well have been prejudicial rather than helpful to Jones. *Id.* at 162.

Jones' counsel explained that he decided not to call Dr. Miller at sentencing because he had to weigh any small benefit to Jones against the inconsistency of trying to persuade the jury that Jones was paranoid after he had already tried to convince the same jury that Jones did not commit the crime. *Id.* at 234–37. Counsel also stated that he had witnessed practically all of Dr. Miller's examination of Jones and had discussed the possibility of presenting mitigating mental health evidence with Dr. Miller after the examination. *Id.* at 232. At that time, Dr. Miller gave counsel no reason to believe that his testimony would have been helpful. *Id.* Under these circumstances, which are fairly supported by the record, we conclude that counsel's failure to present Dr. Miller's testimony or to further investigate on the basis of Dr. Miller's paultry finding of a personality disorder did not constitute ineffectiveness of counsel.

■ Jones argues that his attorney was ineffective for failing to object to the prosecutor's closing argument and the testimony of Sheriff Carson. The prosecutor and Sheriff Carson both stressed that the victim was a police officer performing his duty. Neither the prosecutor nor Sheriff Carson told the jury that the victim was

---

11. We have already addressed Jones' ineffectiveness of counsel claim with regard to the testimony of witness Hammond. *See supra* note 8. We also reject Jones' argument that counsel was ineffective for failing to present testimony from Hammond to support Jones' argument that his confession was induced by threats and beatings. Counsel's testimony at the Rule 3.850 hearing clearly establishes that counsel's decision was tactical. Transcript of Rule 3.850 Proceeding, Vol. V, at 258–59.

12. In fact, Jones had actually been charged with three other felonies in addition to the battery. The trial on all four charges had been set for trial. By pleading *nolo contendere* to the battery charge, Jones went into the capital murder trial with one felony conviction rather than four. Thus, counsel's advice was certainly reasonable. *See* Order Denying Defendant's Motion to Vacate Judgment and Sentence, Ex. v. 9 at 535 (Florida Supreme Court Transcript vol. III).

unique among police officers or discussed specific highlights of the victim's career as an officer. Therefore, Jones' argument essentially boils down to the contention that it was incumbent on his counsel to object to the prosecutor's and Sheriff Carson's emphasis on the fact that the victim was a police officer.

The fact that the victim was a police officer was relevant to a statutory aggravating factor. Fla.Code § 921.141(5)(g) provides for an aggravating factor where "[t]he capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws." The record shows that Jones' counsel objected to the jury instruction regarding this aggravating factor. However, the objection was overruled and, on direct appeal, the Florida Supreme Court held that the trial court's finding of this aggravating factor was proper under the facts of the instant case. *See Jones v. State*, 440 So.2d 570, 577–78 (Fla.1983) (citing *Tafero v. State*, 403 So.2d 355 (Fla.1981), *cert. denied*, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982)).

■ Jones argues that there were other aspects of the closing argument and Sheriff Carson's testimony to which counsel should have objected. After carefully reviewing the record, we do not find this to be the case. Even the prosecutor's several comments to the effect that a police officer is a symbol of order in our society were not improper as they were relevant to the statutory aggravating factor of § 921.141(5)(g). Jones' own confession states that his rea-

sons for killing Officer Szafranski included that he was tired of the police hassling him, that he was going to show the police that they were not the only ones with guns, and that he wanted to shoot a "____ pig." In light of Jones' stated motive (i.e., hostility to the police as a group), it was relevant for Sheriff Carson to testify that the killing had a negative impact on the police department. Accordingly, the failure of counsel to object to the prosecutor's argument or to Sheriff Carson's testimony violates neither the performance prong nor the prejudice prong of *Strickland v. Washington.*[13]

**E. The Burden of Proof Claim**

■ Jones argues that the prosecutor's argument and the trial court's jury instruction improperly shifted to the defendant the burden to prove that mitigating factors outweighed aggravating factors. However, even if we assume that the burden of proof was shifted in this way, this claim is foreclosed by the Supreme Court's recent opinion in *Walton v. Arizona*, —— U.S. ——, 110 S.Ct. 3047, 3055–56, 111 L.Ed.2d 511 (1990). In *Walton*, a plurality of the Supreme Court rejected the argument that an Arizona statute "violates the Eighth and Fourteenth Amendments because it imposes on defendants the burden of establishing, by a preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency." *Id.*, 110 S.Ct. at 3055.[14] Therefore, we are bound to reject Jones' argument regarding the proper allocation of the burden to prove mitigating factors.

---

**13.** Jones also argues that trial counsel was ineffective: (1) for failing to object to certain aspects of the prosecutor's closing argument at the guilt phase; (2) in his guilt phase cross-examination of a witness, Officer Mundy; and (3) for conducting an inadequate voir dire regarding the penalty phase. Jones also contends that he was denied the effective assistance of counsel on direct appeal. These claims are without merit and warrant no discussion.

**14.** Four Justices joined this part of the opinion. Justice Scalia wrote separately to indicate his disapproval of a line of Supreme Court cases that have vacated death sentences on the ground

that the sentencer's discretion was unduly restricted. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion holding that the defendant may not be precluded from introducing mitigating evidence on any aspect of the defendant's character or record and any of the circumstances of the offense). We are bound by the plurality's position in *Walton*, however, because it is the "position taken by those Members who concurred in the judgment on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976)).

**1030**

AFFIRMED.[15]

**15.** Jones' other claims on appeal are rejected without need for discussion. Jones argues: (1) that certain psychiatric reports were used against him at trial and sentencing in violation of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); and (2) that certain instructions and arguments diluted the jury's sense of responsibility for sentencing in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). These claims are procedurally barred.

In addition, the following claims are without merit and warrant no discussion: (1) the argument that aggravating factors were applied overbroadly; and (2) the argument that the admission of evidence that Jones had threatened to "kill a pig" on a prior occasion and evidence of prior unsolved sniper fire from the downstairs apartment rendered the trial fundamentally unfair.

To the extent that Jones has made other arguments not mentioned specifically in this opinion, these claims are also rejected without need for discussion.