**Edward Deanalvin KENNEDY, Petitioner–Appellant,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Corrections, et al., Respondents–Appellees.**

No. 89–3845.

United States Court of Appeals, Eleventh Circuit.

May 31, 1991.

---

Billy H. Nolas, Julie Naylor, Office of Capital Collateral Representative, Tallahassee, Fla., for petitioner-appellant.

Robert A. Butterworth, Atty. Gen., Dept. of Legal Affairs, Richard B. Martell, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before TJOFLAT, Chief Judge, FAY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Edward Deanalvin Kennedy, a prisoner awaiting execution on Florida's death row, appeals from the district court's denial of his petition for a writ of habeas corpus. For the reasons stated below, we affirm the district court's decision to deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

The circumstances of the crimes for which Kennedy was convicted are as follows:

In the early morning hours of April 11, 1981, Edward Deanalvin Kennedy, the Petitioner, and two other inmates escaped from Union Correctional Institute ["UCI"]. Petitioner was serving a life sentence with a mandatory 25 year term for first degree murder. Soon after the escape, Petitioner's two accomplices were apprehended. Petitioner eluded capture and fled on foot approximately 30 miles from the prison to Baldwin, Florida.

Petitioner followed the railroad tracks until he saw a house trailer in a rural area near Baldwin. Petitioner determined that the trailer was empty by shattering a bottle against its side and then entered the mobile home forcibly through the back door. Once inside, Petitioner removed a loaded shotgun and a rifle from a gun case in the master bedroom. He loaded the rifle and placed additional ammunition into a briefcase. He also located a pistol in the bedroom. Soon after changing from his prison clothing into a pair of jeans and a shirt which he also found in the room, Petitioner was surprised by the return of the

trailer's owner, Floyd Cone, Jr., and his cousin, Robert Patrick McDermon, a Florida Highway Patrol Trooper in uniform who was driving with Cone in his patrol car. The two men had previously learned of the search for Petitioner.

Floyd Cone entered his trailer while the Trooper McDermon was outside. Petitioner emerged from behind a curtain and at gunpoint instructed Cone to summon Trooper McDermon into the trailer. As McDermon opened the trailer door, Cone signaled to him Petitioner's position in the kitchen. McDermon leapt back and fired a shot in Petitioner's direction in the trailer. As McDermon ran for the cover of his patrol car, Petitioner emerged from the trailer, shotgun in hand. McDermon again fired at Petitioner. Petitioner returned the fire with the shotgun, hitting McDermon in the chest. McDermon crawled under his patrol car. The trooper fired back. Petitioner ran to the driver's side of the vehicle near the front tire, took a prone position, and fired under the patrol car at McDermon. Throwing aside the empty shotgun, Petitioner ran up to the porch and retrieved the rifle from the trailer door. He returned to the patrol car. By squatting down and looking under the car on the passenger side he located McDermon's body from his armpit down and shot him once more with the ... rifle. Petitioner then ran up to the porch of the trailer where Cone emerged from the front door and grabbed Petitioner's shirt. Petitioner then shot and killed Cone with the rifle, thereafter dragging his body inside the mobile home to conceal it.

Within minutes of these murders, Petitioner was observed fleeing the scene in a westerly direction wearing Cone's clothes and armed with Cone's gun. Several officers who had arrived moments after the earlier exchange of fire pursued Petitioner, firing numerous shots at him. The officers chased Petitioner for approximately a quarter of a mile through the woods until Petitioner climbed a fence and entered another trailer into which a woman had just run. Moments later, he emerged from the trailer holding the woman by the hair. The woman, Francis Templin, tried unsuccessfully to grab the gun from Petitioner while holding her baby. Being unable to force the struggling woman and child into her car, Petitioner withdrew back inside the trailer, holding both Mrs. Templin and her infant son hostage.

Officers surrounded the Templin residence, but no further gunfire was exchanged. Petitioner requested television coverage before he would surrender himself or the hostages. Soon after the arrival of a T.V. camera and through the negotiations of Trooper Davis, Petitioner released the hostages unharmed and surrendered without further incident. He was placed under arrest at the scene.

*Kennedy v. Dugger,* No. 89–829–CIV–ORL–19, at 1–4 (M.D.Fla. Oct. 9, 1989) (footnote omitted).

On December 4, 1981, a jury convicted Kennedy for the first degree murders of Cone and McDermon.[1] After hearing the evidence relevant to sentencing, the same jury recommended that Kennedy be put to death. The sentencing judge followed the jury's recommendation, finding seven aggravating factors under Fla.Code § 921.141(5): (1) the murders were committed by a person under sentence of imprisonment; (2) the murders were committed by a person who had previously been convicted of a capital felony; (3) the murders were committed in the course of the felonies of burglary and robbery; (4) the murders were committed for the purposes of avoiding arrest during an attempted escape from custody; (5) the murders were committed to disrupt or hinder law enforcement; (6) the murder of McDermon was heinous, atrocious, and cruel; and (7) the murder of McDermon was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. The judge found as the sole mitigating

---

1. Kennedy was also convicted of armed robbery, armed burglary, and kidnapping in con-nection with the events of April 11, 1981.

factor that there was some evidence that Kennedy was under extreme duress at the time of the murders.

On direct appeal, the Florida Supreme Court affirmed the convictions and sentences. *Kennedy v. State*, 455 So.2d 351 (Fla.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985). However, the court concluded that the aggravating factor of hindering law enforcement and the aggravating factor of avoiding arrest should have been treated as a single aggravating factor under the circumstances of the instant case. *Id.* at 354. The court also ruled that the trial court erred in finding that the murder of McDermon was heinous, atrocious and cruel, and cold, calculated and premeditated.[2] *Id.* at 355. Nevertheless, the court concluded that:

> Even with the improper factors eliminated, the trial court's determination that the single mitigating factor did not outweigh the aggravating circumstances found to exist remains the appropriate result under the law. The erroneous findings did not prejudicially affect the weighing process and thus were harmless error.

*Id.* at 355.

Kennedy subsequently filed several unsuccessful actions for post-conviction relief in the state courts. *See Kennedy v. Wainwright*, 483 So.2d 424 (Fla.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986); *Kennedy v. State*, 547 So.2d 912 (Fla.1989). In the latest state court disposition, *Kennedy v. Dugger*, 551 So.2d 461 (Fla.1989), the Florida Supreme Court denied relief without opinion. No evidentiary hearings were held in the course of the several state court proceedings.

Having exhausted his state remedies, Kennedy filed the instant action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied relief without holding an evidentiary hearing. *Kennedy v. Dugger*, No. 89–829–CIV–ORL–19 (M.D.Fla. Oct. 9, 1989) (Fawsett, J.). We affirm.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel at Sentencing*

Kennedy argues that he was deprived of the effective assistance of counsel at the penalty phase of the trial. Specifically, Kennedy alleges that, as a result of his trial counsel's shortcomings, important mitigating evidence was neither investigated and developed nor presented at sentencing. Such potential evidence included information regarding Kennedy's background, mental health, and the allegedly deplorable conditions of Kennedy's confinement at UCI.

Before resolving Kennedy's claims of ineffective assistance of counsel, we must determine which facts are operable for purposes of this appeal. There has been no state court evidentiary hearing on these claims. In this circumstance, the district court is required to hold an evidentiary hearing only if "the petitioner alleges facts which, if true, would entitle him to relief." *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.1990) (en banc) (citing *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Porter v. Wainwright*, 805 F.2d 930, 933 (11th Cir. 1986), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987)). Therefore, for purposes of this appeal, we will assume as true the evidence proffered by Kennedy in the district court.

#### 1. The Mental Health Evidence

Kennedy argues that his trial counsel was ineffective for failing to investigate and develop evidence that Kennedy suffered from organic brain damage. In the district court, Kennedy's counsel made a proffer that Dr. Stillman, a psychiatrist

---

2. These corrections to the trial court's findings left the following aggravating factors: (1) [the murders] were committed by a person under sentence of imprisonment; (2) appellant had previously been convicted of a capital felony; (3) the capital felonies were committed in the course of other violent felonies; and (4) the murders were committed for the purpose of avoiding arrest during an attempted escape from custody. *Id.*, 455 So.2d at 355.

who examined Kennedy at the time of a prior offense, would testify that "he saw indicia of organic brain damage...." R3–23. Kennedy's counsel also proffered that Kennedy's trial attorney, Mr. Treece, would testify that he had no tactical or strategic reasons for failing to develop the mental health evidence, that he would have used such evidence if he had known about it, and that, in his opinion, the result of the proceeding would have been different but for the oversight. R3–9.

Assuming the truth of this proffered testimony, we are unable to conclude that counsel's performance was reasonable under the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3] However, this does not end our inquiry. Kennedy is not entitled to relief unless he can also show that there is a reasonable probability that the result of the sentencing proceeding would have been different in the absence of the error. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. After carefully reviewing the record, we are confident that the result would not have been different.[4]

The only evidence proffered in the district court with regard to the failure of trial counsel to present mental health evidence is the testimony of Dr. Stillman, and possibly Dr. Jastrow, to the effect that Kennedy had some indicia of organic brain damage. The proffer was not that the psychiatrists had diagnosed organic brain damage, but only that their findings warranted further testing. We note the speculative nature of this proffer.

Moreover, if Kennedy's trial counsel had presented this testimony, the state would undoubtedly have presented Dr. Krop's testimony. Dr. Krop evaluated Kennedy in 1986 and found "no evidence of any serious psychological disturbances." Appendices to Petition for Writ of Habeas Corpus, App. Y, Vol. 5, at 4. Dr. Krop also found Kennedy "to be a sensitive, emotional and rational person" with no signs of "sociopathic personality disorder." *Id.*[5] We conclude that this claim of ineffectiveness of counsel fails for lack of prejudice.

■ We also conclude that there was no prejudice resulting from trial counsel's failure to present additional evidence on the causes of Kennedy's stuttering problem. Kennedy's counsel proffered evidence that Dr. Smith, a psychologist who evaluated Kennedy in 1987, would testify that Kennedy's nonfluent speech is the product of his background, especially the fact that Kennedy experienced difficulties because he was the only black in an all white school. R3–20; Appendices to Petition for Writ of Habeas Corpus, App. M, Vol. 4. However, Kennedy testified at the penalty phase and described these identical background facts in detail. *See* Trial Transcript, Vol. 9, at 1126–33. Kennedy informed the jury that his stuttering problem was a product of the racism and anxiety that he suffered in his earlier years. *Id.* at 1129. Dr. Smith's testimony, had it been presented, would have been cumulative. Under these circumstances, we cannot conclude that there is a reasonable probability that the presentation of Dr. Smith's testimony would have

---

3. Because we hold that Kennedy cannot demonstrate prejudice, we need not decide whether the district court erred in concluding that the trial attorney made a tactical decision to forego presentation of additional mitigating evidence. We note, however, in light of the proffer and the absence of an evidentiary hearing that we have considerable doubt that the record conclusively demonstrates that a tactical decision was made. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

4. Because this claim is easily resolved on the merits, we do not address the state's contention that the claim is procedurally barred.

5. In the district court, Kennedy's counsel explained that Dr. Krop did not find evidence of organic brain damage because Dr. Krop evaluated Kennedy using tests that were designed to diagnose personality disorders rather than organic brain damage. R3–22. Although Kennedy might have had some explanation for Dr. Krop's apparently contradictory diagnosis, it is clear that Dr. Krop's testimony would have weakened any mitigating effect of the proffered mental health evidence.

persuaded the jury to reach a different result.

### 2. The Prison Conditions

■ Kennedy argues that his trial counsel was ineffective for failing to present witnesses, other than Kennedy himself, to testify that the conditions at UCI mitigated Kennedy's escape and desperate attempts to avoid capture, including the murders. In the district court, Kennedy's counsel proffered that the two inmates who escaped with Kennedy would testify regarding the prison conditions. The appendices to Kennedy's petition for habeas corpus also contain detailed evidence of the deplorable conditions at UCI. We will assume the truth of this evidence and that, pursuant to Kennedy's proffer in the district court, trial counsel had no tactical reasons for failing to present this evidence.

Once again, however, we are unable to find prejudice resulting from these alleged errors. Kennedy described the conditions at UCI to the jury. Trial Transcript, Vol. 9, at 1137–38, 1145, 1148–49. Cumulative testimony from two other escaped inmates probably would not have persuaded the jury to impose life imprisonment rather than the death penalty. Testimony was also presented at the penalty phase that Kennedy was not a violent person in prison. The sentencing judge considered this information in finding the mitigating circumstance of extreme duress. Sentencing Order, Transcript of Record in the Supreme Court of Florida, Vol. 2, Attachment A, at 390. Although the documentary evidence proffered in the district court provides more authoritative evidence of significant adverse prison conditions, considering the totality of the circumstances, we cannot conclude that there is reasonable probability that the jury would have recommended life had the evidence been presented. Therefore, we conclude that Kennedy has not demonstrated prejudice under the *Strickland* test; Kennedy's claims of ineffectiveness of counsel do not warrant relief or an evidentiary hearing.[6]

### B. *The Clemons Claim*

■ Kennedy argues that the Florida Supreme Court improperly upheld the death penalty on direct appeal despite concluding that the trial court erred by finding seven aggravating factors. Although the Florida Supreme Court found four rather than the seven aggravating factors found by the trial court, the court held that the trial court's erroneous findings constituted harmless error. Kennedy contends that this resolution violated *Clemons v. Mississippi*, —— U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). We disagree.

In *Clemons*, the Mississippi Supreme Court upheld a death sentence despite its conclusion that the "especially heinous" aggravating factor found by the trial court was constitutionally invalid. Although the United States Supreme Court vacated the death sentence, the Court expressly declined to hold that a state appellate court could not conduct "reweighing of the aggravating and mitigating evidence or ... harmless error review" after invalidating an aggravating factor. The Court vacated the death sentence because the Mississippi court's opinion did not clearly adopt the harmless error approach. The Court was unsure whether the state court's state-

---

**6.** Kennedy also argues that counsel was ineffective for failing to present testimony from his former girlfriend regarding his background. This argument is without merit and warrants no discussion.

Although Kennedy argued in the district court that counsel was ineffective for failing to fully utilize an investigator for the penalty phase, he is apparently not pursuing this claim on appeal. In any event, an affidavit from the investigator, Charles Meacham, and the proffer in the district court indicate that, at best, Meacham would have testified that Kennedy's trial counsel never requested him to investigate in preparation for the penalty phase. There is no indication of what other mitigating information might have been presented had there been such an investigation. Therefore, even assuming that counsel's performance was deficient with respect to this claim, we conclude that Kennedy cannot demonstrate prejudice under *Strickland*.

Finally, Kennedy also argued in the district court that counsel was ineffective in failing to play a videotape of Kennedy's surrender to the police. This claim has apparently not been pursued on appeal and, in any event, it is without merit and warrants no discussion.

ment[7] meant that it felt that the result would have been the same even if the jury had been instructed properly, or that the result would have been the same even if there had been no instruction on the invalid factor at all. *Clemons*, 110 S.Ct. at 1451. The Court noted that, if the Mississippi court was actually following the latter course, the conclusion that the error was harmless would be "difficult to accept" in light of the fact that only one other aggravating circumstance was present and that the prosecutor strongly emphasized the "especially heinous" factor in his argument. *Id.*

The instant case is substantially different from *Clemons* for several reasons. First, unlike the state court in *Clemons*, the Florida Supreme Court in the instant case clearly indicated that the basis of its decision was harmless error review. In *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the Supreme Court explicitly approved the harmless error review which the Supreme Court of Florida employed in this case. *See also Walton v. Arizona*, — U.S. —, 110 S.Ct. 3047, 3056–58, 111 L.Ed.2d 511 (1990) (approving Arizona Supreme Court construction of especially heinous aggravating factor as being similar to the construction of the Florida Supreme Court); *Clemons*, — U.S. at —, 110 S.Ct. at 1450–51 (harmless error analysis permissible). The Florida Supreme Court explicitly concluded that "[t]he [trial court's] erroneous findings did not prejudicially affect the weighing process and *thus were harmless error*." *Kennedy v. State*, 455 So.2d 351, 354 (Fla.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985) (emphasis added).

Second, and perhaps more importantly, after the Florida Supreme Court reduced the number of aggravating circumstances found by the trial court, the court still had at least four valid aggravating circumstances to weigh against only one mitigating factor. In *Clemons*, however, the Court was particularly troubled by the fact that the elimination of the invalid aggravating circumstance left only one aggravating factor to be balanced against the mitigating circumstances. *Clemons*, 110 S.Ct. at 1451. In other words, *Clemons* presented a much closer balancing question than does the instant case. This closer question, combined with the ambiguity of the Mississippi court's opinion, was enough for the *Clemons* Court to vacate the death sentence. In the instant case, however, because of the greater weight of aggravating circumstances before the state court and the clear indication of harmless error review, we conclude that the district court properly declined to grant relief on Kennedy's *Clemons* claim. The Florida Supreme Court could appropriately find in this case that the erroneous findings of the sentencing judge "did not prejudicially affect the weighing process."

### C. *The Prosecutor's Arguments*

■ Kennedy challenges the propriety of the prosecutor's closing argument at the penalty phase on a number of grounds. Although we reject all of these claims, several warrant brief discussion.[8]

Kennedy contends that the prosecutor improperly presented "victim impact evidence" to the jury in violation of *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). These cases held generally that it is improper for the prosecutor to present evidence or argument on the

---

**7.** The Mississippi court stated that "[w]e likewise are of the opinion beyond a reasonable doubt that the jury's verdict would have been the same with or without the 'especially heinous, atrocious or cruel' aggravating circumstance." *Clemons*, 110 S.Ct. at 1451.

**8.** It is possible that some of Kennedy's arguments with respect to the prosecutor's argument are procedurally barred. *See Kennedy v. State,* 547 So.2d 912, 913 (Fla.1989). However, when these claims were raised in a subsequent state habeas action, the Florida Supreme Court denied relief without opinion. *See Kennedy v. Dugger,* 551 So.2d 461 (Fla.1989). We need not address whether these state court dispositions satisfy the requirements of *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), because Kennedy's claims are easily resolved on the merits.

victim's good character or on the impact the victim's death had on the victim's family. We fail to find such a violation.[9]

Most of the argument to which Kennedy now objects related to McDermon's status as a police officer. This argument was not improper as it was relevant to either the aggravating factor of "hindering law enforcement" or the aggravating factor that "the murder was committed to avoid arrest or during an escape from custody." [10] *See* Fla.Stat.Ann. §§ 921.141(5)(e) and (g) (West Supp.1990); *Jones v. Dugger,* 928 F.2d 1020, 1028 (11th Cir.1991). The Florida Supreme Court also concluded that the argument was relevant to these aggravating factors. *Kennedy v. State,* 455 So.2d 351, 354 (Fla.1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985). *See also Jones v. State,* 440 So.2d 570, 577–78 (Fla.1983) (citing *Tafero v. State,* 403 So.2d 355 (Fla.1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982) (fact that victim was a police officer on active duty was relevant to the aggravating factor of "hindering law enforcement.")). Moreover, our review of the record does not reveal that the prosecutor pointed to any specific and personal information about the victims.[11] Therefore, the prosecutor's references to McDermon's status as a police officer were not improper.[12]

█ Kennedy argues that the prosecutor improperly presented argument at sentencing that invited the jury to put themselves in the position of the victim. The prosecutor argued:

> Can you imagine, in your own living room not bothering a soul on a Saturday afternoon? He stopped up at his rela-

tive's house and had a beer and he walked back down to your own house, and, a total stranger, because you got in his way, destroys you.

Trial Transcript, Vol. 9, at 1190. Kennedy argues that this statement was an improper "Golden Rule" argument. *See Bertolotti v. State,* 476 So.2d 130, 133 (Fla.1985). However, we doubt that this argument was improper. In *Davis v. Kemp,* 829 F.2d 1522, 1528–29 (11th Cir.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988), we upheld a similar argument as permissible comment on the future dangerousness of the defendant. The prosecutor had argued in *Davis* that:

> The death penalty is called for. Ask yourselves this question, how would you feel living in this community if you looked out of your window one night and saw Freddie Davis walking down the street coming up toward your house. If that wouldn't put a feeling of cold terror in your heart, what would?

*Davis,* 829 F.2d at 1528. The argument challenged in the instant case is not significantly different from the argument that we upheld in *Davis,* and therefore, was not improper.

█ Kennedy next asserts that the prosecutor improperly argued that Kennedy lacked remorse despite Kennedy's indication otherwise during his testimony. Kennedy told the jury that he was sorry for the deaths. Trial Transcript, Vol. 9, at 1146. However, the prosecutor later argued:

> [D]id he ever ask you to forgive him; say he was sorry that he's destroyed Bob

---

**9.** Because we resolve this claim on the merits, we do not address the issue of whether *Booth* and *Gathers* apply retroactively under the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**10.** The Florida Supreme Court merged these two aggravating factors on direct appeal; neither factor was invalidated.

**11.** One exception is the prosecutor's remarks regarding Floyd Cone's enjoyment of hound dogs and hunting. However, this fleeting and isolated reference was not sufficiently preju-

dicial to constitute a *Booth* violation. Moreover, as the district court noted, testimony at the guilt phase, which is not challenged on appeal, conveyed to the jury the information that Cone and his brother hunted with hound dogs. *See* Trial Transcript, Vol. 7, at 712–13. Thus, the jury would have been aware of this information in any event.

**12.** In addition, the prosecutor's several comments to the effect that a police officer is a symbol of law and order in our society were not improper as they were also relevant to the statutory aggravating factor of Fla.Stat.Ann. § 921.141(5)(g) (West. Supp.1990).

McDermon's life, that he's destroyed Floyd Cone's life? Not a word.

*Id.* at 1186. Although this argument was evidently inaccurate, the jury clearly heard Kennedy's own statements expressing remorse. Under these circumstances, we cannot characterize the prosecutor's remarks regarding remorse as prejudicial or contributing to a fundamentally unfair trial.[13]

■ Kennedy argues that the prosecutor improperly injected his personal opinion on the evidence into his arguments. As the most egregious example of such conduct, Kennedy points to the following comment on Officer Moneyhun's recitation of Kennedy's confession:

> But I'll say this to you in all sincerity: If you believe that Officer Moneyhun walked in this courtroom, got up there on that stand and took an oath before you and made a solemn pact with God to tell the truth, if you believe he did that, and came in here and lied against that Defendant and made up all that statement that he recited to you, then, I say you should acquit him if that's what you believe because we've got the worst, most corrupt law enforcement agencies in this State if that happened, and, I don't believe it.

Trial Transcript, Vol. 8, at 989–990. The prosecutor did improperly state his personal opinion.[14]

However, whether Kennedy is entitled to relief on the ground of improper prosecutorial argument depends on "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In determining whether improper argument rises to this level, "we must ask whether there is a 'reasonable probability' that, but for the prosecutor's offending remarks, the outcome of the [guilt or] sentencing [proceeding] would have been different." [15] *Williams v. Kemp,* 846 F.2d 1276, 1283 (11th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1836, 108 L.Ed.2d 965 (1990) (citations omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We cannot conclude that Kennedy is entitled to relief under this standard. As in *Gates v. Zant,* 863 F.2d 1492, 1503 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 353, 107 L.Ed.2d 340 (1989), we conclude that, considering the totality of the circumstances, the challenged arguments did not render the guilt or sentencing proceeding fundamentally unfair. The challenged arguments in the instant case are no more egregious than in *Gates* and *Brooks v. Kemp,* 762 F.2d 1383, 1403 n. 30 (11th Cir.1985) (en banc), *vacated and remanded,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *aff'd on remand,* 809 F.2d 700 (11th Cir.) (en banc), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987). Therefore, as in *Gates* and *Brooks,* we reject the contention that the prosecutor's arguments rendered the trial fundamentally unfair.[16]

---

13. *See infra* discussion regarding whether the prosecutor's arguments rendered the trial fundamentally unfair.

14. We note, however, that the jury was informed that the prosecutor's argument was not evidence.

15. We apply the same standard to prosecutorial argument at both the guilt and sentencing phases of a capital case. *See, e.g., Brooks v. Kemp,* 762 F.2d 1383, 1403 n. 30 (11th Cir.1985) (en banc), *vacated and remanded,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *aff'd on remand,* 809 F.2d 700 (11th Cir.) (en banc), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987).

16. Kennedy's claim that certain portions of the prosecutor's argument lessened the jury's sense of responsibility for sentencing in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is without merit and warrants no discussion.

We also reject Kennedy's argument with respect to the prosecutor's references to Kennedy's future danger to the community in light of *Alvord v. Wainwright,* 725 F.2d 1282, 1286 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984), and *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

■ Finally, we turn to Kennedy's argument that the prosecutor improperly commented on his right to remain silent at both the guilt and penalty phases. At the guilt phase, where Kennedy did not testify, the prosecutor remarked:

But, how do we know there was a burglary out there? What independent proof do we have of the burglary without —again, without any statement of the defendant?

Trial Transcript, Vol. 8, at 997. However, in determining whether this statement was "manifestly intended or was of such character that a jury would rationally and necessarily take it to be a comment on the failure of the accused to testify," *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir.1987), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988) (citations omitted), we "must examine the comment in context to evaluate the motive behind the statement and its impact on the jury." *Id.* Our review of the record reveals that in context, the prosecutor was not commenting on Kennedy's failure to testify; rather, the prosecutor was merely arguing to the jury that the evidence of Kennedy's guilt was overwhelming even without considering the statement that Kennedy gave *to the police. See, e.g.,* Trial Transcript, Vol. 8, at 1004–05 ("As I say, the testimony that I've reviewed at this time, even without the statement of Edward Kennedy, … is sufficient."). Thus, we conclude that the prosecutor's argument at the guilt phase did not violate Kennedy's Fifth Amendment right to refrain from testifying.

■ Turning to the penalty phase, where Kennedy *did* testify, we also find no violation. To rebut Kennedy's attempt to establish that he was under emotional duress at the time of the murders, the prosecutor argued that:

The best evidence that you have got as to what [Kennedy's] state of mind is or

was—because he didn't tell you when he took the stand. He didn't say one single word about the trailer.

Trial Transcript, Vol. 9, at 1180. This remark was not inappropriate in light of the fact that Kennedy testified at the penalty phase. The remark was confined to Kennedy's penalty phase testimony, and thus, does not even present a case as close as *Tucker v. Francis*, 723 F.2d 1504, 1508–14 (11th Cir.1984), *reinstated in part on rehearing, Tucker v. Kemp*, 762 F.2d 1496 (11th Cir.1985) (en banc), where relief was denied. In *Tucker*, the court concluded that by testifying at the penalty phase, the defendant waived any right to preclude the prosecutor from commenting on his silence even where the prosecutor's comments were directed toward the defendant's silence at the guilt phase where the defendant had not testified. Therefore, we conclude that the scope of Kennedy's waiver of his right to remain silent at sentencing was broad enough to permit the prosecutor to make the challenged comment.[17]

### D. The Burden of Proof Claim

■ Kennedy argues that the prosecutor's argument and the trial court's jury instructions improperly shifted to the defendant the burden to prove that mitigating factors outweighed aggravating factors. However, even if we assume that the burden of proof was shifted in this way, this claim is foreclosed by the Supreme Court's recent opinion in *Walton v. Arizona*, — U.S. ——, 110 S.Ct. 3047, 3055–56, 111 L.Ed.2d 511 (1990). In *Walton*, a plurality of the Supreme Court rejected the argument that an Arizona statute "violates the Eighth and Fourteenth Amendments because it imposes on defendants the burden of establishing, by a preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency." *Id.*, 110 S.Ct. at 3055.[18] Therefore, we reject Ken-

---

**17.** To the extent that Kennedy has challenged other aspects of the prosecutor's closing argument on appeal, these arguments are without merit and warrant no discussion.

**18.** Four Justices joined this part of the opinion. Justice Scalia wrote separately to indicate his

disapproval of a line of Supreme Court cases that have vacated death sentences on the ground that the sentencer's discretion was unduly restricted. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion holding that the defendant may not be precluded from introducing mitigating evidence

nedy's argument regarding the proper allocation of the burden to prove mitigating factors.

For the foregoing reasons, we affirm the district court's decision to deny the writ.[19]

AFFIRMED.

on any aspect of the defendant's character or record and any of the circumstances of the offense). We are bound by the plurality's position in *Walton,* however, because it is the "position taken by those Members who concurred in the judgment on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976)).

19. Kennedy's argument that his death sentence should be vacated on the ground that the trial court failed to provide a factual basis for the penalty is without merit and warrants no discussion. We reject for the same reason Kennedy's argument that the trial court erroneously declined to instruct the jury on self-defense. To the extent that Kennedy has made other arguments not specifically mentioned in this opinion, they are also without merit and warrant no discussion.