**CMS SOFTWARE DESIGN SYSTEMS, INC. and Charles M. Stuart, Plaintiffs-Appellants,**

v.

**INFO DESIGNS, INC., a Michigan corporation, Defendant-Appellee.**

No. 85–1044.

United States Court of Appeals, Fifth Circuit.

March 28, 1986.

Robert W. Turner, Hubbard, Thurman, Turner & Tucker, Richard Kirk Cannon, Dallas, Tex., for plaintiffs-appellants.

Michael A. O'Neil, Gardere & Wynne, Herbert J. Hammond, Dallas, Tex., for defendant-appellee.

Before POLITZ, HIGGINBOTHAM and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

Based on Federal Rule Civil of Procedure 41(b), the trial court involuntarily dismissed this copyright infringement action brought by CMS Software Design Systems, Inc., a corporation founded to produce and market computer software by Charles M. Stuart. The trial court acted too hastily, and we must REVERSE and REMAND.

CMS was formed in 1980 and secured copyrights covering accounts payable, accounts receivable, and general ledger computer programs designed to enable small

businesses to handle many of their internal accounting functions automatically on mini-computers. Stuart worked approximately sixty hours per week for six months to develop the computer source coding necessary to formulate these programs. He hoped to market the programs through CMS.

Late in 1979, Richard Stahl, representing himself as a potential dealer/distributor of the CMS programs, ordered from Stuart one copy of each of the three programs plus an accompanying payroll program. Copyright notices were attached to each of the disks that Stahl received. From December 1979 through September 1980, Stuart and Stahl conversed approximately seven times about several "bugs" or problems encountered when using the programs. As this type of interchange is common in the industry, Stuart responded appropriately, making modifications to the CMS programs and mailing the modified disks at no additional cost to Stahl. Stuart heard nothing from Stahl after September, 1980.

In the spring of 1981, Stuart learned that Stahl was marketing programs with the same designations, "accounts payable," "accounts receivable," and "general ledger," through a company called Info Designs, Inc. Stuart feared possible pirating of his programs and so expressed himself to a representative of Commodore, the manufacturer of computer hardware for which his programs had been designed. Stahl, hearing of these accusations, wrote a letter to CMS in May, 1981, denied Stuart's accusations and claimed that the Info Designs programs were "unique ..., developed for Info Designs, Inc., and ... our exclusive product for distribution ... developed using a blend of public domain software and unique routines." When Stuart finally obtained source code listings for the Info Design programs, he determined that 80–90% of each program was identical to his own creation and promptly filed suit. In the meantime, Info Designs had gone public and generated approximately $4 million in gross sales and over $1.5 million in royalty commitments.

Info Designs' affirmative defense to the action was that an oral, royalty-free license had been granted by Stuart to Stahl in a telephone conversation on March 29 and confirmed by a letter from Stahl dated April 17, 1980. CMS vehemently contested this affirmative defense. CMS denied that any license had been given and denied that a royalty-free license would have constituted a "fair exchange" for the "de-bugging" services allegedly performed by Stahl, as the April 17 letter suggests. CMS denied even receiving the April 17 letter, and there is no record evidence that it was received. A copy was introduced in evidence as defendant's alleged "file copy."

During the presentation of its case in chief, plaintiff's counsel cross-examined Stahl as an adverse witness about the affirmative defense of an oral license. Info Designs' counsel requested and received permission to go beyond the scope of CMS's examination. Stahl's own counsel then examined Stahl at length, presenting new testimony on the issue of the existence of a license.[1] Plaintiff, aware that the new testimony had to be rebutted in order to attack Stahl's affirmative defense, expressly moved and was granted permission to recall and further question Stuart concerning this defense and others during rebuttal after conclusion of the defense case.

Following defense counsel's interrogation of Stahl, and the close of plaintiff's case in chief, however, Info Designs moved for and was granted a Rule 41(b) involuntary dismissal. The court found that Stahl obtained a license by virtue of the March 29, 1980 telephone conversation corroborated by the April 17, 1980 letter, which

---

1. Examination of Stahl by his own counsel occupies 140 pages of transcript. The new testimony consisted of Stahl's account of the phone conversation in which the alleged oral license was given, and extensive technical testimony on the "consideration" Stahl gave for the license, namely discovering and helping Stuart correct problems with both the programming itself and the accounting structure the programming was designed to effect.

provides a complete defense to the charge of copyright infringement.

Rule 41(b) provides in part as follows:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as the trier of facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

■ The purpose of Rule 41(b) is to permit a defendant to move for judgment, or an involuntary dismissal, "when the district court, *even before hearing the defendant's evidence*, determines that the plaintiff has failed to offer persuasive evidence regarding the necessary elements of his case." *duPont v. Southern Nat. Bank of Houston, Tex.*, 771 F.2d 874, 879 (5th Cir.1985) (emphasis added). An involuntary dismissal can be justified in two situations. First, a plaintiff may not have demonstrated in fact or law the elements of his claim—such as a failure to present credible evidence of the defendant's negligence when pursuing that type of action. Second, the plaintiff's own evidence may have established one of the defendant's defenses as a matter of fact or law—in the negligence example, if plaintiff's testimony revealed that he was an employee entitled to receive workmen's compensation as his exclusive remedy.

■ The trial court dismissed CMS' case on the latter ground, i.e., a finding that the testimony before it established that plaintiff had granted an oral license to Info Designs. However, CMS did not bear the burden of proof on the issue of license, and in the ordinary course was not required to rebut defendant's affirmative defense in its case in chief, *Rodriguez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir.1986). Because adverse evidence on the affirmative defense had been introduced during plaintiff's case in chief, CMS opted, and prudently obtained explicit court approval, to reserve its final rebuttal testimony until the close of defendant's case. Subsequently withdrawing his permission to introduce rebuttal testimony, the judge, who was at the time of trial seriously ill and died after the case concluded, involuntarily dismissed CMS's case on the basis of the still unrebutted affirmative defense. The result of this procedure was exactly the same as that condemned by this court in *duPont:* a Rule 41(b) dismissal was granted in favor of the party bearing the burden of proof before the opposing party was given an opportunity to rebut.[2] The trial court in effect granted summary judgment for the defendant.

The order of presentation of the parties' cases also resulted in an improvidently timed dismissal during this trial. Rule 41(b) authorizes dismissal at the close of the presentation of plaintiff's evidence or at the close of all the evidence. We do not read it as requiring the court to award judgment *only* at the precisely stated points in trial, because, given the desirable accommodations to parties and witnesses in the sequencing of testimony and evidence, Fed.R.Evid. 611(a), "the close of plaintiff's evidence" cannot be readily defined. Whether a Rule 41(b) motion was timely raised is, of course, still an important question. If the motion is not timely raised and

---

**2.** In *duPont*, plaintiff settlor sought to revoke or modify an irrevocable trust in order to return the trust property to his own control. Defendants were orally granted a Rule 41(b) involuntary dismissal at the close of plaintiff's case. When findings of fact and conclusions of law were issued, however, the court found that crucial disputed properties had been ineffectively transferred to the trust and therefore still belonged to plaintiff. Defendants appealed their Pyrrhic victory. This court reversed recognizing that the trial court had implicitly denied a portion of defendant's Rule 41(b) motion, and then contrary to the provisions of Rule 41(b), had further denied defendants their right to present evidence upon denial of a Rule 41(b) motion. Although defendant was denied due process through the trial court's error in that case, its principle fully applies to the similar stunting of plaintiff's efforts in this case.

properly preserved, defendant has waived it and lost his right to appeal it. *See Wealden Corp. v. Schwey,* 482 F.2d 550, 552 (5th Cir.1973); C. Wright & A. Miller, *Federal Practice and Procedure* § 2371 at 221 (1971). That is not, however, the issue in this case. Assuming a timely raised and properly preserved motion, the issue here is whether the trial court abused its discretion in granting the motion at the time it did, impinging due process rights, in a case in which defendant's affirmative defense was the crucial disputed issue at trial.

The Seventh Circuit presciently described the difficulty that may attend the grant of a Rule 41(b) dismissal after part of the defendant's case has been presented.[3] "It might well be improper to grant a Rule 41(b) motion mid-way through defendant's case if the judge weighed the testimony of defendant's unexamined witnesses as well as plaintiff's evidence. In such a situation there is a potential for bias against plaintiff." *Sanders v. General Services Administration,* 707 F.2d 969, 972 (7th Cir. 1983). Here, the trial court understood that plaintiff had not introduced rebuttal testimony regarding the affirmative defense and nevertheless cut off plaintiff's opportunity to rebut. We believe that the court's action deprived plaintiff of a fair opportunity to contest the defense of license. *See duPont; Carter v. Morehouse Parish School Bd.,* 441 F.2d 380, 382 (5th Cir.) *cert. denied,* 404 U.S. 880, 92 S.Ct. 201, 30 L.Ed.2d 161 (1971). Granting a Rule 41(b) dismissal was an abuse of discretion.

Because we dispose of this case as an improper use of Rule 41(b) by the trial court, it is not necessary to review the trial court's fact-findings, some of which depend upon credibility choices. Under the circumstances, a full retrial is the appropriate action on remand. Compare *Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784 (5th Cir.1975).

We therefore REVERSE the judgment of the district court and REMAND for a new trial.

---

**3.** An involuntary dismissal differs from a directed verdict in that the trial court may consider and weigh the evidence, not being confined to granting a dismissal "as a matter of law." 5 z. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.13[4] at 41–177 to 41–179 (2d ed. 1985).