## HEWLETT–PACKARD COMPANY, Plaintiff,

v.

## BAUSCH & LOMB, INC., Defendant.

### No. C–84–20642 RPA.

United States District Court, N.D. California.

April 5, 1988.

S. Leslie Misrock, Jonathan A. Marshall, Pennie & Edmonds, New York City, James P. Kleinberg, McCutchen, Doyle, Brown & Enersen, San Jose, Cal., Hewlett–Packard Co., Colorado Springs, Colo., for plaintiff.

Laurence H. Pretty, Gary A. Clark, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, Cal., John M. Ottoboni, Anne L. Enea, Ferrari, Alvarez, Olsen & Ottoboni, San Jose, Cal., Holly E. Kendig, Mark A. Samuels, O'Melveny & Myers, Los Angeles, Cal., Bernard D. Bogdon, Bausch & Lomb Inc., Rochester, N.Y., Godfrey Isaac, Isaac, Glusman & Dolin, Los Angeles, Cal., for defendant.

## ORDER RE SEVERAL MOTIONS AND SETTING TRIAL SCHEDULE

AGUILAR, District Judge.

On March 18, 1988, the Court entertained plaintiff Hewlett–Packard's ("HP") motion for summary judgment against defendant Bausch & Lomb, Inc. ("B & L") on the validity of the defendant's patent, Re. No. 31,684 (the "Yeiser reissue patent"). After reviewing the papers and hearing the argument of counsel, the Court concludes that the motion should be granted. The affidavits of patent agent Lawrence Fleming submitted by B & L are grossly inaccurate. Had the patent examiner been apprised of the true state of facts, he would have rejected the Fleming affidavits. In view of the patent examiner's primary reliance on the Fleming affidavits, the rejection of the affidavits leaves B & L without a legal basis for obtaining or holding the reissue

patent. *See* 37 C.F.R. § 1.175 (describing the reissue oath or declaration requirement).

■ Having concluded that the reissue patent is invalid, there remains the question of the effect of such a ruling. The reissue patent contains twelve claims, but claims 1–9 are identical to the claims in the original patent. Only claims 10–12 were added through the reissue process. HP is charged with infringing five claims: claims 1, 2, and 10–12. HP contends that once the reissue patent is invalidated, all claims are extinguished. B & L argues that at worst, only claims 10–12 would be extinguished with the nullification of the reissue patent and claims 1–9 would live on.

When a reissue patent is denied, under the regulations "the original patent will be returned to [the] applicant upon his request." 37 C.F.R. § 1.179 (1987). On the other hand, if the reissue patent is granted, the original patent is surrendered. The statute spells out the effect of reissue as follows:

> The surrender of the original patent shall take effect upon the issue of the reissue patent, and every reissued patent shall have the same effect and operation in law ... as if the same had been originally granted in such amended form ... to the extent that [the reissue patent's] claims are identical to the original patent, [it] shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252.

Thus, in this case the original patent has ceased to exist. Although part of the original patent not affected in the reissue process, claims 1–9 only exist as part of the Yeiser reissue patent. If the reissue patent is *entirely* voided as HP contends, then those claims also will cease to exist. The effect would be particularly draconian for B & L, since its reissue application never questioned the correctness of claims 1–9.

In addressing the status of the "carry-over" original nine claims, the parties offer conflicting legal authority. Arguing that all twelve claims should be nullified, HP offers, *inter alia*, the cases of *Riley v. Broadway–Hale Stores, Inc.*, 114 F.Supp. 884 (S.D.Cal.1953), *aff'd*, 217 F.2d 530 (9th Cir.1954), and *General Radio Co. v. Allen B. Dumont Laboratories, Inc.*, 129 F.2d 608 (3d Cir.1942), *cert. denied*, 317 U.S. 654, 63 S.Ct. 50, 87 L.Ed. 526 (1942). B & L counters seeking the preservation of the original nine claims citing the Supreme Court case of *Gage v. Herring*, 107 U.S. 640, 2 S.Ct. 819, 27 L.Ed. 601 (1883), and the opinion of Judge Learned Hand in *Foxboro Co. v. Taylor Instrument Co.*, 157 F.2d 226 (2d Cir.1946), *cert. denied*, 329 U.S. 800, 67 S.Ct. 494, 91 L.Ed. 684.

On the basis of the cases, there appears to be a serious question about the state of the law on the subject. Having reviewed the authorities, the Court concludes that the proper result here is that the original patent claims should remain valid because the reissue application only added or amended claims 10–12. Judge Hand's ruling in *Foxboro* seems directly applicable to this case. The surrender of the original patent did not invalidate the claims which were carried over by B & L into the reissue patent application. This conclusion is supported by the Supreme Court decision in *Gage v. Herring*, 107 U.S. 640, 646, 2 S.Ct. 819, 824, 27 L.Ed. 601 (1883) ("The invalidity of the new claim in the reissue does not indeed impair the validity of the original claim which is repeated and separately stated in the reissued patent."), and also is consistent with the United States Court of Customs and Patent Appeals (the predecessor of the Federal Circuit) in its decision in *In re Wittry*, 489 F.2d 1299, 1303 (CCPA 1974).[1]

In addition to case law, the patent statutes and regulations support the conclusion that carry-over claims not amended in a reissue application ought not to be extin-

---

1. Observing that the Manual of Patent Examining Procedures states that a finding of insufficiency of the oath offered in support of a reissue application should be a general ground of rejection of all claims, the Court stated that the

"instruction obviously is not applicable to original patent claims where, as here, the insufficiency does not apply to *all the new* claims in the reissue application." (emphasis in original) 489 F.2d at 1303 n. 3.

guished with the rejection of reissue claims. Under the relevant regulations, the denial of a reissue application does not affect the original patent claims. Hence, under 37 C.F.R. § 1.178 if a reissue application is refused, "the original patent will be returned to [the] applicant upon his request." By analogy, when a district court strikes down a reissue patent after the reissue application has been granted, those claims that are carried over from the original patent which were not implicated in the reissue application should remain valid despite the surrender and extinction of the original patent.

While analytically it may appear odd to retain claims without a valid patent, the anomaly is merely one of semantics which Congress itself has adopted. In 35 U.S.C. § 253, Congress provides that "[w]henever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby rendered invalid." A similar provision allows for the maintenance of infringement suits based on such remaining claims.[2] Therefore, the more persuasive case law, the regulations, and the patent statutes each point to the conclusion that the original patent claims which B & L carried over without substantial amendment or alteration in the reissue application should not be affected by the Court's rejection of the affidavits which were the necessary predicate for approval of the reissue application. Good cause appearing therefor, the Yeiser reissue patent claims 10–12 are declared invalid. The carry-over claims 1–9 from the original patent remain valid.

■ At the hearing on March 18, 1988, the Court posed the question whether and under what circumstances original (and unamended) patent claims could be invalidated as a result of conduct attendant to a reissue application. In essence, the Court *sua sponte* set cross motions for summary judgment on the issue of whether inequitable conduct invalidated the Yeiser reissue patent claims 1–9. The parties briefed

the issue on a shortened time basis and the matter was orally argued by the parties on April 1, 1988.

Having considered all papers submitted and the arguments offered by the parties, the Court must conclude that although it is a close question, there remains a triable issue of material fact with respect to B & L's conduct before the United States Patent and Trademark Office ("PTO") in procuring the reissue patent; specifically, HP has not fully adduced evidence showing that B & L intentionally deceived the PTO or was grossly negligent in obtaining the reissue patent. Particularly in view of the Federal Circuit's decision in *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571 (Fed.Cir.1985), it is prudent to allow B & L to put on its witnesses to rebut the evidence of inequitable conduct proffered by HP.

In order to resolve the question of the propriety and effect of B & L's conduct in obtaining the Yeiser reissue patent, and because it is a close and potentially dispositive issue, the Court is rearranging the order of presentation of proof at the trial. Rather than initiating trial with B & L's case in chief, the trial will begin on Tuesday, April 5, 1988 at 9 a.m. with HP putting forward its case for invalidity of the Yeiser reissue patent. This first segment of the trial will be limited only to the issue of the affirmative defense that B & L's inequitable conduct before the PTO in procuring the Yeiser reissue patent nullifies all of the claim in the patent. HP will put on its case for inequitable conduct, B & L will present its case, and then HP will be permitted a limited amount of time for rebuttal.

As promptly as possible after the conclusion of evidentiary portion of the inequitable conduct case, the Court will issue a ruling. If necessary, the Court will also rule at that time on the motion *in limine* concerning portions of the deposition testi-

---

**2.** Title 35 U.S.C. § 288 states:

Whenever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office before commencement of the suit.

mony of Messrs. Schopflin and Wolloch and related exhibits. The motion *in limine* involving the intervening rights defense of HP is now mooted by the extinction of Yeiser reissue patent claims 10–12.

The Court also concludes that it will permit B & L to offer live testimony from three of its attorneys—Messrs. Jobe, Robbins, and Bogdon—on the issue of inequitable conduct. The Court also will permit deposition testimony of those three witnesses to be offered into evidence provided it is properly excerpted from a large body of deposition transcripts accumulated by the parties. Normally, deposition testimony of those who testify at trial is permitted into evidence only for purposes of impeachment, but in this case exceptional circumstances warrant an aberration from the norm. HP reports and B & L admits that B & L refused to decide whether its three lawyer witnesses would take the stand during the trial. As a result, and in view of the attorney-client privilege and work-product shield available to B & L to protect these witnesses from being called by HP, HP was forced to expend a great deal of time and money to fully depose all three individuals. In the interests of economy, HP has requested, and the Court finds acceptable, the proposal to allow into evidence portions of those depositions. Furthermore, because of the pressing time constraints in this Court caused by the size of the docket and the number of pending criminal trials, judicial efficiency and economy will be enhanced by limiting oral testimony to that which is necessary to test demeanor.

Finally, with respect to certain documents sought by HP over which B & L claims either the attorney-client privilege or protection under the work-product doctrine, the Court defers ruling on the motion to compel pending the presentation of HP's case for inequitable conduct. If HP is able to set forth a *prima facie* case for inequitable conduct, the Court will order the production of the documents. If HP does not make out a *prima facie* case, all else being equal, the documents will remain protected under privilege.

This order is intended for the convenience of the parties to summarize the present status of the case. In connection with ruling on HP's case for inequitable conduct, the Court will issue a more detailed analysis and more ample findings with respect to each of the matters discussed in this order.

IT IS SO ORDERED.