Andrew E. JOHNSON, et al., Plaintiffs,

v.

Sandra MORTHAM, etc.,
et al., Defendants.

No. TCA 94–40025–MMP.

United States District Court,
N.D. Florida,
Tallahassee Division.

Feb. 7, 1996.

Gerald J. Sullivan, Jr., Sullivan & Boyd, Jacksonville, FL, for plaintiffs.

Stephen N. Zack, Pro Hac Vice, Miami, FL, Brenda Wright, Pro Hac Vice, Jackqueline A. Berrien, Pro Hac Vice, Lawyers Committee for Civil Rights under Law, Washington, DC, Gerald B. Curington, General Counsel, House of Representatives, Tallahassee, FL, for Pat Thomas.

Richard A. Hixson, Tallahassee, FL, Thomas R. Tedcastle, Florida House of Representatives, Tallahassee, FL, Stephen N. Zack, Pro Hac Vice, Miami, FL, Brenda Wright, Pro Hac Vice, Jackqueline A. Berrien, Pro Hac Vice, Lawyers Committee for Civil Rights under Law, Washington, DC, Gerald B. Curington, B. Elaine New, General Counsel, House of Representatives, Tallahassee, FL, for Bolley L. Johnson.

George L. Waas, Attorney General's Office, Department of Legal Affairs, Tallahassee, FL, David Alan Tepper, Department of State, Office of the General Counsel, Tallahassee, FL, for Sandra Mortham.

Brenda Wright, Pro Hac Vice, Todd A. Cox, Pro Hac Vice, Lawyers Committee for Civil Rights under Law, Washington, DC, for Frank Cummings.

Brenda Wright, Pro Hac Vice, Lawyers Committee for Civil Rights under Law, Washington, DC, for Samuel L. Green, Sr., Leonard O'Neal, Glynell Presley, and Mary Lawson Brown.

Rodney G. Gregory, Jacksonville, FL, J. Gerald Hebert, Pro Hac Vice, Alexandria, VA, for Corrine Brown.

Charles G. Burr, Tampa, FL, for Florida State Conference of NAACP Branches.

Before HATCHETT, Circuit Judge, PAUL, Chief District Judge, and VINSON, District Judge.

### ORDER

PAUL, Chief Judge:

On January 12, 1996, the Court ordered the parties in this cause to fully brief the status of the burden of proof in the strict scrutiny context (Doc. 117). The following parties filed briefs on the issue: Plaintiffs (Doc. 122); Defendant–Intervenors Cummings and Brown (Doc. 123); Defendant–Intervenor United States (Doc. 125); Defendant Mortham (Doc. 126); and Defendant–Intervenor NAACP (Doc. 128). Not surprisingly, Plaintiffs argue that since they have proven that Florida's Third Congressional District was drawn primarily for race-conscious reasons, Defendants and Defendant–Intervenors bear the burden of proving that the Third District passes strict scrutiny. On the other hand, Defendants and Defendant–Intervenors argue that Plaintiffs bear the ultimate burden of proof on all issues, and that Defendants' burden at the strict scrutiny stage is one of production only.

### DISCUSSION:

The Supreme Court recently addressed the distinction between the burden of persuasion and the burden of production. The burden of persuasion, also known as the burden of proof, is "the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose." *Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries,* —— U.S. ——, —— – ——, 114 S.Ct. 2251, 2255–56, 129 L.Ed.2d 221, 228–29 (1994). In contrast, the burden of production is "a party's obligation to come forward with evidence to support its claim." *Id.; see also United States v. Hollis,* 569 F.2d 199, 204 n. 6 (3d Cir.1977) ("The burden of persuasion includes the burden of establishing before a fact-finder that a given proposition is correct. The burden of production deals with the burden of coming forward with enough evidence to raise a genuine issue of fact."). "The distinction is now very generally accepted, although often blurred by careless speech." *Greenwich, supra,* —— U.S. at ——, 114 S.Ct. at 2256, 129 L.Ed.2d at 229. (quoting *Hill v. Smith,* 260 U.S. 592, 594, 43 S.Ct. 219, 220, 67 L.Ed. 419, 422 (1923)). This appears to be an occasion when the parties have blurred the distinctions between these burdens.

There has been a great deal of confusion among the parties about the appropriate trial burdens in this cause. The parties have had difficulty in reconciling what seem to be two competing black letter rules: first, that plain-

tiffs ordinarily bear the burden of proving all the essential elements of their prima facie cases; and second, that when strict scrutiny applies, the government defendants bear the burden of demonstrating that the challenged government action is narrowly tailored to further a compelling governmental interest. The Court will clarify this matter, as discussed below.

The Supreme Court has repeatedly held that once a plaintiff establishes that governmental action was based on a suspect classification, the government bears the burden of demonstrating that the classification is narrowly drawn to achieve a compelling governmental interest. *E.g., Miller v. Johnson,* —— U.S. ——, ——, 115 S.Ct. 2475, 2490, 132 L.Ed.2d 762, 782 (1995) ("To satisfy strict scrutiny, **the State must demonstrate** that its districting legislation is narrowly tailored to achieve a compelling governmental interest.") (emphasis supplied); *Adarand Constructors, Inc. v. Pena,* —— U.S. ——, ——, 115 S.Ct. 2097, 2110, 132 L.Ed.2d 158, 180 (1995) ("[A]ny person, of whatever race, **has the right to demand than any governmental actor justify** any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny.") (emphasis supplied); *Bernal v. Fainter,* 467 U.S. 216, 227, 104 S.Ct. 2312, 2319, 81 L.Ed.2d 175, 184 (1984) ("To satisfy strict scrutiny, **the State must show** that [the challenged law] furthers a compelling state interest by the least restrictive means practically available.") (emphasis supplied); *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786, 799 (1982) ("With respect to [suspect] classification, it is appropriate to enforce the mandate of equal protection by **requiring the State to demonstrate** that its classification has precisely tailored to serve a compelling governmental interest.") (emphasis supplied); *University of California Regents v. Bakke,* 438 U.S. 265, 305, 98 S.Ct. 2733, 2756, 57 L.Ed.2d 750, 781 (1978) ("We have held that in order to justify the use of a suspect classification, **a State must show** that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary to the accomplishment of its purpose or the safeguarding of its interests.") (emphasis supplied) (citations omitted); *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–88, 36 L.Ed.2d 16, 32–33 (1973) ("[S]trict scrutiny means that the State's system is not entitled to the usual presumption of validity, that **the State rather than the complainants must carry a 'heavy burden of justification,'** that **the State must demonstrate** that its [racial classification] has been structured with 'precision,' and is 'tailored' narrowly to serve legitimate objectives and that it has selected the 'less drastic means' for effectuating its objectives.") (emphasis supplied); *Dunn v. Blumstein,* 405 U.S. 330, 342–43, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274, 284 (1972) ("In sum, [the] laws must be measured by a strict equal protection test: they are unconstitutional **unless the State can demonstrate** that such laws are 'necessary to promote a compelling governmental interest.' ... [A] **heavy burden of justification is on the State.**") (emphasis supplied) (quoting *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600, 615 (1969)); *see also Duke v. Cleland,* 954 F.2d 1526, 1529 (11th Cir.1992) ("If the challenged law burdens a fundamental constitutional right, then the law can survive **only if the State demonstrates** that the law advances a compelling interest and is narrowly tailored to meet that interest.") (emphasis supplied); *Stiles v. Blunt,* 912 F.2d 260, 263 (8th Cir.1990) ("[T]he strict scrutiny test requires **the government to prove** that it has a compelling interest in the classification it has selected.") (emphasis supplied), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 241 (1991).

Likewise, even when the challenged governmental action is evaluated under the less stringent "intermediate scrutiny" test, the Supreme Court has held that the government is required to demonstrate that its actions are substantially related to an important governmental objective. *E.g., Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090, 1098 (1982) ("[T]he party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an 'exceeding persuasive justification' for the classification."); *Kirchberg v. Feenstra,*

450 U.S. 455, 461, 101 S.Ct. 1195, 1199, 67 L.Ed.2d 428, 434 (1981) (same); *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 151, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107, 115 (1980) ("The burden ... is on those defending the discrimination to make out the claimed justification.").

Moreover, when applying the strict-scrutiny test in other areas of constitutional law, the Supreme Court has consistently required the government to demonstrate that the challenged actions are narrowly tailored to a compelling governmental interest. *E.g. Burson v. Freeman*, 504 U.S. 191, 199, 112 S.Ct. 1846, 1852, 119 L.Ed.2d 5, 15 (1992) ("To survive strict scrutiny ... a **State must do more than assert a compelling state interest, it must demonstrate** that its law is necessary to serve the asserted interest.") (emphasis supplied); *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271, 281 (1989) ("If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if **the State shows** that it advances a compelling state interest.") (emphasis supplied); *Employment Division, Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 899, 110 S.Ct. 1595, 1611, 108 L.Ed.2d 876, 899 (1990) ("Once it has been shown that a government regulation or criminal prohibition burdens the free exercise of religion, we have consistently asked the government to demonstrate that unbending application of its regulation to the religious objector 'is essential to accomplish an overriding governmental interest,' or represents 'the least restrictive means of achieving some compelling state interest.'") (O'Conner, J., concurring); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141, 107 S.Ct. 1046, 1049, 94 L.Ed.2d 190, 197 (1987) (state laws burdening religions "must be subjected to strict scrutiny and could be **justified only by proof by the State** of a compelling interest"); *see also Fulani v. Krivanek*, 973 F.2d 1539, 1542–43 (11th Cir.1992) ("Under strict-scrutiny analysis, once a plaintiff has demonstrated the burden on her fundamental right, the state must show 'that the law advances a compelling interest and is narrowly tailored to meet that interest.'").

In apparent contrast to these decisions, every post-*Shaw* three-judge court addressing the burden of proof issue has spoken with a single voice: in an equal protection challenge to a redistricting plan, the government's burden to overcome strict scrutiny in its use of a race-based redistricting plan is one of production only, not persuasion. The courts reached this conclusion, notwithstanding the fact that a law or other governmental action "that impinges upon a fundamental right explicitly or implicitly secured by the Constitution is presumptively unconstitutional." *City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 76, 100 S.Ct. 1490, 1504, 64 L.Ed.2d 47 (1980).

For example, in *Shaw v. Hunt*, the court described the burden of proof as follows:

[I]n a *Shaw*-like challenge to a race-based redistricting plan, as in any other sort of Equal Protection case, the state's burden at the strict scrutiny stage is producing evidence that the plan's use of race is narrowly tailored to further a compelling state interest, and that plaintiffs bear the ultimate burden of persuading the court either that the proffered justification is not compelling or that the Plan is not narrowly tailored to further it.

861 F.Supp. 408, 436 (E.D.N.C.1994), *probable jurisdiction noted*, —— U.S. ——, 115 S.Ct. 2639, 132 L.Ed.2d 878 (1995).

In *Vera v. Richards*, the Southern District of Texas likewise held that

[w]e agree with the courts in *Hays* and in *Shaw* on remand that a *Shaw* claim should be proved by the method typical of equal protection analysis. Plaintiffs are obliged to present evidence in support of their racial gerrymandering claim as outlined in *Shaw*. Defendants then have the burden to produce evidence that any districts found to racially gerrymandered were dictated by a compelling state interest and are narrowly tailored to further that interest.... As in all Constitutional cases, the plaintiffs retain the ultimate burden of proof.

861 F.Supp. 1304, 1336–37 (S.D.Tex.1994), *probable jurisdiction noted* by *Bush v. Vera*,

— U.S. ——, 115 S.Ct. 2639, 132 L.Ed.2d 877 (1995).

Similarly, in *Quilter v. Voinovich,* the court held that when the burden shifts to defendants at the strict scrutiny stage, "the Defendants' shifted burden is one of production only." In contrast, "[t]he Plaintiffs still bear the ultimate burden of persuading the court that the Defendants did not have a compelling state interest that justified their use of race in the reapportionment process" or that the redistricting plan "was not narrowly tailored to meet such an interest." 912 F.Supp. 1006, 1018 (N.D.Ohio 1995) *appeal dismissed,* —— U.S. ——, 116 S.Ct. 42, 133 L.Ed.2d 9 (1995).

Finally, in *Johnson v. Miller,* a three-judge panel within this Circuit held that

> the burden of proof as to whether race was the overriding consideration behind the current districting plan rested squarely with the Plaintiffs. At the strict scrutiny stage, we agree with the court in *Shaw v. Hunt* that, while burdens of production shift to the Defendants, the ultimate burden of persuasion remains with Plaintiffs.... Plaintiffs still bear the burden of persuading the court that the State's evidence did not support a finding that the redistricting plan was narrowly tailored to a compelling state interest.

864 F.Supp. 1354, 1378–79 (S.D.Ga.1994), *aff'd,* —— U.S. ——, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (citations omitted). Indeed, on appeal the Supreme Court and all parties to the *Miller* litigation did not give any indication that the burdens in a *Shaw* challenge should be otherwise.

■ The Court finds that these decisions correctly state the allocation of trial burdens in a *Shaw*-type challenge to a redistricting plan, and are not inconsistent with the nature of strict scrutiny review. Specifically, the Court holds that Plaintiffs bear the ultimate burden of persuasion on all essential elements of their case: namely, that the Third District was the product of predominately race-conscious districting, and that the Third District fails to pass strict scrutiny. However, in so holding, the Court further finds that Plaintiffs bear only the burden of production on the first issue, while the Defendants seeking to sustain the constitutionality of the Third District bear the burden of production on the second. *Cf. Vera v. Richards,* 861 F.Supp. at 1342 ("Because, as we have concluded, the plaintiffs' burden of production extends solely to the race-consciousness of the districts combined with the disregard of traditional districting criteria, then the State has the burden of producing evidence of narrowly tailoring to achieve its compelling state interest.").

In *Miller v. Johnson,* the Supreme Court described in detail the nature of a plaintiff's burden of production in a *Shaw*-type challenge:

> The plaintiff's burden is to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominating factor motivating the legislature's decision to place a significant number of voters within or without a particular district. To make this showing, a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles ... to racial considerations. *These principles inform the plaintiff's burden of proof at trial.*

515 U.S. at ——, 115 S.Ct. at 2488, 132 L.Ed.2d at 779–80 (emphasis supplied). Plaintiffs have met their burden of production on summary judgment, by showing that Florida's Third Congressional District was the product of racial gerrymandering (*see* Doc. 91 at 48–52, 54, 58). Since the Defendants were unable to rebut this showing, Plaintiffs likewise carried their burden of persuasion on this essential element of their prima facie case. To this extent, then, the Plaintiffs have already satisfied their burden of proof at trial, even though they ultimately bear the burden of persuasion on every essential element of their case. *Cf. Miller,* 515 U.S. at ——, 115 S.Ct. at 2488 (see emphasized text above).

In contrast, Defendants have not yet met their burden of production. Defendants' burden of production at trial requires Defendants to produce evidence justifying the ne-

cessity for predominately race-conscious districting in the Third District. As a result, Defendants must produce evidence at trial demonstrating that the Third District survives under strict scrutiny, the "most rigorous and exacting standard of constitutional review." *Miller, supra,* 515 U.S. at ——, 115 S.Ct. at 2490, 132 L.Ed.2d at 782. Defendants' burden of production is therefore not a light one, and is in fact very much akin to an affirmative defense.[1] *See supra* cases cited at pages ——–—— of this order.

The reason for this heavy burden of production is because "the purpose of strict scrutiny is to 'smoke out' illegitimate uses of race by assuring that the [government] is pursuing a goal important enough to warrant use of a highly suspect tool." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493, 109 S.Ct. 706, 721, 102 L.Ed.2d 854, 881–82 (1989). Furthermore, in the equal protection context, the Supreme Court has declared that whenever any person can prove that "the government treats [that] person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand, supra,* —— U.S. at ——, 115 S.Ct. at 2114, 132 L.Ed.2d at 183. Since "[e]xpress racial classifications are immediately suspect because, 'absent searching judicial inquiry . . ., there is simply no way of determining what classifications are 'benign' or 'remedial' and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.'" *Shaw v. Reno,* 509 U.S. 630, ——, 113 S.Ct. 2816, 2824, 125 L.Ed.2d 511, 526 (1993) (quoting

*Richmond, supra,* 488 U.S. at 493, 109 S.Ct. at 721, 102 L.Ed.2d at 881). In other words, "racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification. . . . [E]ven 'the most rigid scrutiny' can sometimes fail to detect an illegitimate racial classification." *Adarand, supra,* —— U.S. at ——, 115 S.Ct. at 2117, 132 L.Ed.2d at 188 (citations omitted). It is for these reasons that racial classifications are "presumptively invalid and can be upheld only upon an extraordinary justification" by the state. *Shaw, supra,* 509 U.S. at ——, 113 S.Ct. at 2825, 125 L.Ed.2d at 526 (quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870, 883 (1979)).

The Supreme Court reaffirmed this position just last year in *Adarand Constructors, Inc. v. Pena,* —— U.S. ——, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). The *Adarand* Court first detailed the three general propositions with respect to governmental racial classifications:

First, skepticism: any preference based on racial or ethnic criteria must necessarily receive the most searching examination. Second, consistency: the standard of review under the Equal Protection Clause is not dependant on the race of those burdened or benefitted by a particular classification, *i.e.* all racial classifications reviewable under the Equal Protection Clause must be strictly scrutinized. And third, congruence: equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.

1. In *Shaw v. Hunt,* the three-judge panel discussed the close parallel between a defendant's burden of production at the strict scrutiny stage and an affirmative defense:

Nor do we read the passage in *Hays I* upon which plaintiffs . . . rely as holding that the state bears the burden of persuasion with respect to either prong of the strict scrutiny inquiry. While the *Hays I* court did remark that there was a rough "parallelism" between "the State's burden here of establishing the affirmative justification of a compelling state interest" and a "criminal defendant's burden— at common law—of establishing an affirmative defense" . . . it was very careful to point out that it was not using this analogy to make any

point about the burden of persuasion with respect to the presence or absence of such justification.

861 F.Supp. at 436 (quoting *Hays v. Louisiana,* 839 F.Supp. 1188, 1206 & n. 59 (W.D.La.1993), *rev'd on other grounds,* —— U.S. ——, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995)). In other words, the two trial burdens are alike in the sense that they both require a significant showing by the defendant. The only analytical difference between the two trial burdens is that unlike an affirmative defense, a plaintiff raising an equal protection claim still bears the burden of persuasion on whether defendant's proffered evidence satisfies strict scrutiny.

— U.S. at ——, 115 S.Ct. at 2110, 132 L.Ed.2d at 179–80 (citations omitted). The Supreme Court then explained: "Taken together, these three propositions lead to the conclusion that any person, of whatever race, **has the right to demand that any governmental actor justify** any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Id.* (emphasis supplied).

Relaxing the government defendants' burden in justifying the use of racial classifications in this case would run counter to the very purpose of strict scrutiny review. Moreover, in the case sub judice, Defendants bear a particularly high burden of producing evidence demonstrating that the Third District passes strict scrutiny, since the Third District and the redistricting plan adopted by a three-judge panel of this Court must be "held to stricter standards" than a district included in a plan adopted by a state legislature. *Wise v. Lipscomb,* 437 U.S. 535, 540, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978) (quoting *Connor v. Finch,* 431 U.S. 407, 414, 97 S.Ct. 1828, 1833, 52 L.Ed.2d 465 (1977)).

■ What is particularly troubling about the case at bar is that Defendants and Defendant–Intervenors have attempted, through discovery, to shift to Plaintiffs the burden of producing evidence demonstrating that the Third District fails to pass strict scrutiny.[2] Nowhere is this strategy more obvious than in Defendant–Intervenor United States' December 23, 1995 notice of deposition duces tecum, whereby the Government requested that the *Plaintiffs* produce documents that prove the Third Congressional District fails to pass strict scrutiny (*see* Pls.' Attach. to Doc. 105). In fact, even if the Government's request for production complied with the requirements of the Federal Rules of Civil Procedure—which it did not (*see* Doc. 111 at 2 n. 1)—any such request must be limited to whatever rebuttal evidence Plaintiffs plan to use at trial that is germane to the strict scrutiny analysis. Since Plaintiffs do not bear the burden of production on this issue, if they choose not to present any such rebuttal evidence at trial, then they obviously would not have any deposed or documentary evidence to provide to Defendants and Defendant–Intervenors in the course of discovery.

In sum, at trial Defendants and Defendant–Intervenors bear the burden of producing evidence demonstrating there is "**a strong basis in evidence**" that the *DeGrandy* court's predominant use of race-conscious districting satisfies strict scrutiny[3]. *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 277, 106 S.Ct. 1842, 1848, 90 L.Ed.2d 260, 270 (1986) (emphasis supplied). To the extent that Plaintiffs have any burden at all at this stage of the proceedings, it is merely one of rebutting the evidence put forward by Defendants and Defendant–Intervenors on the strict scrutiny issue, and persuading the Court that Defendants have not made a sufficient showing to satisfy strict scrutiny review. Thus, Plaintiffs can prevail at trial even if they fail to produce any witnesses or put forward any evidence, if they can persuade the Court that Defendants and Defendant–Intervenors have not sufficiently produced evidence demonstrating that the Third District is narrowly tailored to further a

---

2. It is simply inconceivable that Plaintiffs should now be placed in a position to meet Defendants' burden of production by demonstrating that no "extraordinary justification" exists to warrant the drawing of the Third District. Such a result would turn strict scrutiny jurisprudence on its head. As discussed at great length above, once Plaintiffs demonstrate that the government predominately used a racial classification in drawing the Third District, "Defendants then have the burden to produce evidence that any districts found to racially gerrymandered were dictated by a compelling state interest and are narrowly tailored to further that interest." *Vera v. Richards,* 861 F.Supp. at 1336–37. District Three can only be upheld if the Defendants satisfy their burden of producing evidence demonstrating that the use of race was narrowly tailored to achieve a compelling governmental interest, and Plaintiffs fail to persuade the Court that Defendants' justifications are insufficient to satisfy strict scrutiny review.

3. Defendant–Intervenor United States suggests that Defendants have already met their burden of production by pointing to the findings made by the *DeGrandy* court. Defendants may choose to rely solely upon the *DeGrandy* decision to meet their burden of production, but in so doing Defendants run the risk that Plaintiffs will satisfy their burden of persuasion by merely pointing to the absence of the Defendants' evidence.

compelling governmental interest[4]. Of course, the Plaintiffs' failure to put on any rebuttal evidence at all may be a calculated gamble that fails, if the Defendants have otherwise presented sufficient evidence showing that the Third District passes strict scrutiny.

Ordinarily the order of presentation at trial requires plaintiffs to present their cases first, followed by the defendants (including the presentation of any affirmative defenses), and concluded by the plaintiffs' rebuttal. Plaintiffs then bear the ultimate burden of persuading the court or fact-finder that they have proven their prima facie case, while defendants bear the burden of persuasion on their affirmative defenses.

■■■ However, it is also well established that a trial court has broad discretion to exercise control over the order of presentation at trial. *Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334–35, 47 L.Ed.2d 592 (1976); *United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1371 (11th Cir. 1994); *Jones v. Dugger,* 928 F.2d 1020, 1025–26 (11th Cir.), *cert. denied,* 502 U.S. 875, 112 S.Ct. 216, 116 L.Ed.2d 174 (1991). *See also* Fed.R.Evid. 611(a) (trial courts "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence"); *United States v. Koon,* 34 F.3d 1416, 1429 (9th Cir.1994) ("District courts have broad discretion in deciding the order in which evidence may be presented at trial"), *cert. granted in part,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995); *United States v. Maddox,* 944 F.2d 1223, 1230 (6th Cir.1991) (trial court has substantial discretion to control mode and order of interrogating witnesses), *cert. denied,* —— U.S. ——, 114 S.Ct. 1328, 127 L.Ed.2d 675 (1994). As a result, if the evidence will be more clearly presented by requiring a particular party to come forward first, a trial court may alter the order of presentation at trial. *Cf.*

*Anderson v. Great Lakes Dredge & Dock Co.,* 509 F.2d 1119, 1131 (2d Cir.1974) ("[T]he district judge, in conducting a criminal or civil trial, acts as more than a mere moderator or umpire. . . . His function is to set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the [fact-finder] will have the evidence clearly presented") (internal citations omitted). There will be no error in changing the order of presentation, so long as the court does not shift the ultimate burden of proof or persuasion to the other party, *Lisbon Contractors, Inc. v. United States,* 828 F.2d 759, 765 (Fed.Cir.1987) ("The order of presentation of evidence by the parties is a matter of trial management . . . [T]he procedural requirements of the court for one party and then the other to come forward with evidence *does not shift the ultimate burden of proof or persuasion on an issue back and forth.*") (emphasis supplied), and still gives the defendants an opportunity to move for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b)[5] after plaintiffs have put on their case, *cf. CMS Software Design Sys., Inc. v. Info Designs, Inc.,* 785 F.2d 1246, 1248 (5th Cir.1986) ("Rule 41(b) authorizes dismissal at the close of the presentation of plaintiff's evidence or at the close of all evidence. We do not read it as requiring the court to award judgment only at the precisely stated points in trial . . ."). Indeed, trial judges have not hesitated to change the order of presentation at trial where the circumstances warranted such a change. *See, e.g., United States v. Ecker,* 543 F.2d 178, 193–94 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 722 F.Supp. 592, 594 (N.D.Cal.1988), *vacated in part on other grounds,* 882 F.2d 1556 (Fed. Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990).

---

4. *Cf. Miller,* 864 F.Supp. at 1379 ("Plaintiffs still bear the burden of persuading the court that *the State's evidence* did not support a finding that the redistricting plan was narrowly tailored to a compelling state interest.") (emphasis supplied).

5. Where a case is tried by a court, without a jury, a motion for involuntary dismissal must be made pursuant to Fed.R.Civ.P. 41(b). *See* Fed R.Civ.P. 41 advisory committee's note. The rules related to a motion for a directed verdict in a jury trial pursuant to Fed.R.Civ.P. 50 are similar in effect and interpretation. *E.g., A & N Club v. Great Am. Ins. Co.,* 404 F.2d 100, 103 (6th Cir.1968).

■ In the case at bar, the only remaining trial issue is whether the Third District survives under strict scrutiny. As detailed at great length above, Defendants, the parties attempting to sustain the constitutionality of the Third District, bear the burden of production on this issue. Consequently, the Court deems it necessary to alter the traditional order of presentation at trial for two reasons: first, for clarity of the presentation of evidence at trial; and second, to require the Defendants to initially justify the governmental action at issue in this case—namely, the racial gerrymandering of the Third District—as strict scrutiny jurisprudence clearly dictates. However, it must be emphasized that in so doing, the Court is not altering the trial burdens of the respective parties. Defendants and Defendant–Intervenors will still bear the burden of production on the strict scrutiny issue, while Plaintiffs will still bear the ultimate burden of persuasion on the strict scrutiny issue.[6]

Accordingly, the trial of this matter will be conducted as follows: Since the only remaining issue is whether the Third District passes strict scrutiny, Defendants and Defendant–Intervenors will first put on evidence, if any, to meet their burden of production. Plaintiffs will then be allowed to put on rebuttal evidence, if any, to counter the Defendants' case. Finally, Defendants and Defendant–Intervenors will be given an opportunity to rebut the Plaintiffs' evidence. Since the Plaintiffs at all times bear the burden of persuasion on every essential element of their prima facie case, Plaintiffs will then have the burden of persuading the Court that the Third District cannot survive under strict scrutiny review. If Defendants and Defendant–Intervenors believe that Plaintiffs have failed to meet their burden of persuasion at the conclusion of Plaintiffs' case, then they may move for involuntary dismissal pursuant to FED.R.CIV.P. 41(b) at that time.[7]

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED:**

Defendants and Defendant–Intervenors bear the burden of producing evidence at trial that demonstrates the Third District passes strict scrutiny. Plaintiffs bear the burden of persuading the Court that Defendants have failed to meet their burden.

The order of presentation at trial is altered and subject to the procedural limitations set out above.

**DONE AND ORDERED.**

HATCHETT, Judge, concurring in part and dissenting in part.

I concur in the order as it relates to burdens of proof because I understand it to mean: (1) plaintiffs have the burden of proving through a preponderance of the evidence that the *DeGrandy* court did not have a compelling interest in drawing the Third District as it exists and did not narrowly tailor the Third District through the use of the least restrictive means; and (2) the change from the traditional sequence of the parties' presentation of proof at trial is simply for the convenience of the court and neither alters the plaintiffs' burden of persuasion nor the defendants' burden of production. *See Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed.Cir.1987). Therefore, the plaintiffs bear the burden of proving a prima facie case on all of the essential elements of their case; the defendant/intervenors must produce evidence tending to show that the *DeGrandy* court had a compelling interest for drawing the Third District as it did and used a means that was appropriate, and ultimately the plaintiffs must persuade the court that they are entitled to relief.

---

6. If the trial of this matter were before a jury, there would be some risk that altering the order of presentation might confuse the jury as to which party bears the ultimate burden of persuasion. However, since the strict scrutiny issue will be tried by the Court, there is no risk of any such confusion. It is clear to the Court that the Plaintiffs at all times bear the burden of persuasion as to every essential element of their case.

7. Since the Defendants' burden of production on the strict scrutiny issue is in many respects like an affirmative defense (although the Plaintiffs retain the ultimate burden of persuasion on that issue), it is appropriate to allow Defendants to make their Rule 41(b) motion only *after* Plaintiffs have been given a full and adequate opportunity to rebut the Defendants' evidence. *See Info Designs*, 785 F.2d at 1249.

I dissent in part, however, because I maintain the belief that the majority errs in finding authority for its actions in *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) and *Miller v. Johnson*, — U.S. —, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995). *See Johnson v. Mortham*, 915 F.Supp. 1529, 1558–59 (N.D.Fla.1995) (Hatchett, J. dissenting). Both *Shaw* and *Miller* address Fourteenth Amendment challenges to state legislatures' redistricting plans. It is clear from both *Shaw* and *Miller* that the principles flowing from those decisions apply in that context. *See, e.g., Shaw,* — U.S. at —, 113 S.Ct. at 2819 (recognizing that the case addressed the propriety of race-based *state legislation* ); *Miller,* — U.S. at —, 115 S.Ct. at 2488 (stating that in assessing the sufficiency of a challenge to a districting plan, courts must be sensitive to the complex interplay of forces that enter a *legislature's* redistricting calculus).

In this case, however, plaintiffs challenge a three-judge federal court drawn plan—not a state legislature's plan. Therefore, I do not believe *Shaw* and *Miller* control this case. The Supreme Court's treatment of *DeWitt v. Wilson,* however, provides a more appropriate framework for resolving this matter as that case addressed a three-judge federal court drawn plan. *DeWitt v. Wilson,* 856 F.Supp. 1409 (E.D.Cal.1994), *aff'd in part and appeal dismissed in part,* — U.S. —, 115 S.Ct. 2637, 132 L.Ed.2d 876 (1995).

---

1. The term "risk of nonpersuasion" is often utilized as a more descriptive way of characterizing the burden of persuasion. *See* 9 J. Wigmore, *Evidence,* § 2486 (J. Chadbourn rev. ed. 1981).

2. Indeed, commentators who have examined the issue have concluded that once the plaintiff proves racial discrimination, the risk of nonpersuasion shifts to the government to show that its discrimination comports with strict scrutiny. *See, e.g.,* James F. Blumstein, *Racial Gerrymandering and Vote Dilution: Shaw v. Reno in Doctrinal Context,* 26 Rutgers L.J. 517, — (1995) ("Clearly, the risk of nonpersuasion on the issue of justification rests with the state and in the absence of the state's satisfying that burden, [racial discrimination] cannot withstand strict scrutiny. Statutes that classify by race are subject to strict scrutiny and therefore are presumptively

---

VINSON, Judge, concurring in part and dissenting in part.

I fully concur with almost all of this order and with its determination that the defendants must be required to put on their evidence at trial before the plaintiffs. However, since I am firmly convinced that the risk of nonpersuasion [1] on the issue of strict scrutiny is now wholly upon the defendants, I disagree with that part of the order which seems to describe the defendants' burden as one of production only.

As the order sets out, the Supreme Court has used the terms "demonstrate," "justify," "show," and "establish" to describe the defendants' burden under strict scrutiny. According to BLACK'S LAW DICTIONARY 389 (5th ed. 1979), "demonstrate" means "to derive from admitted premises by steps of reasoning which admit of no doubt; to prove indubitably." "Justify" is defined as "to prove or show to be just, right, or reasonable ...; to show to have had a sufficient legal reason." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 656 (1985). "Show" is defined in this context as "[t]o make apparent or clear by evidence, to prove." BLACK'S LAW DICTIONARY 1237 (5th ed. 1979). "Establish" means "to put beyond doubt: PROVE." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 425 (1985); BLACK'S LAW DICTIONARY 490 (5th ed. 1979). By repeatedly using these terms, the Supreme Court has clearly evinced its intent to force the state to bear a heavy burden of justification whenever it has used a racial classification.[2]

---

invalid. Since the default rule in such circumstances mandates that a failure on the part of the state to adequately justify, not just to articulate a rationale for, a law results in its invalidation, it seems apparent that more than just a burden of production shifts to the government.") (footnotes omitted); Christopher J. Soller, *Constitutional Law—Equal Protection—Voting Rights Act of 1965—Racial Redistricting and Gerrymandering—Election Discrimination,* 32 Duq.L.Rev. 865, 891 (asserting that *Shaw* "shifted the burden of proof to the state to exhibit that the use of race in redistricting was narrowly tailored to a compelling governmental interest"); Russell W. Galloway, Jr., *Basic Equal Protection Analysis,* 29 Santa Clara L.Rev. 121, — (1989) (stating that the government must prove that its racial classification satisfies strict scrutiny).

Moreover, because the plaintiffs in this case established on summary judgment that Congressional District Three was the product of racial gerrymandering, there now exists a presumption of invalidity. *See Shaw v. Reno,* 509 U.S. 630, ——, 113 S.Ct. 2816, 2825, 125 L.Ed.2d 511, 526 (1993) ("A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification.") (quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870, 883 (1979)). Whether the presumption that now exists should effectively shift the risk of nonpersuasion to the defendants is essentially an issue of evidence.

It has been asserted that the term " 'presumption' is the slipperiest member of the family of legal terms, except its first cousin, 'burden of proof.' " McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE, § 342 (2d ed. 1972). Although the term has been used in many senses, once a presumption arises, it generally has one of two effects. According to the so-called "bursting bubble" theory of presumptions, once the party against whom the presumption is raised offers some rebuttal evidence (*i.e.* meets a burden of production), the presumption simply falls out of the case. *See Alabama By–Products v. Killingsworth,* 733 F.2d 1511, 1514 (11th Cir.1984); 1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE, ¶ 301 (1992); McCORMICK'S EVIDENCE, *supra,* at § 345(A). Under this theory, often called the Thayer Doctrine, the risk of nonpersuasion does not shift. *See* 9 J. Wigmore, EVIDENCE, § 2493(e), (J. Chadbourn rev. ed. 1981). The "bursting bubble" theory, or its many variations, is used in many situations

[*See, e.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207, 216 (1981)], and has been adopted as the general rule by the Federal Rules of Evidence. Rule 301, FED. R.EVID.[3]

However, "[m]any legal scholars have now come to the view that there is a ... better rule: anything worthy of the name 'presumption' has the effect of fixing the burden of persuasion on the party contesting the existence of the presumed fact." McCORMICK'S EVIDENCE, *supra,* at § 345(B). This is the position advanced by Professor Morgan, and generally accepted by Maguire, McCormick, and other authorities in the field. J. Wigmore, EVIDENCE, § 2493(c) (J. Chadbourn rev. ed. 1981). The Supreme Court has also applied this evidentiary principle to many situations. *See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977) (After plaintiff had established that his speech played a significant part in government's decision not to rehire him, government had to show by a preponderance of the evidence that it would have reached the same decision even in the absence of protected conduct.); *Keyes v. School Dist. No. 1, Denver, Colorado,* 413 U.S. 189, 208, 93 S.Ct. 2686, 2698, 37 L.Ed.2d 548, 563 (1973) ("[A] finding of intentionally segregative school board actions in a meaningful portion of a school system ... creates a presumption that other segregated schooling within the system is not adventitious," and shifts the burden of persuasion to the state to prove "that other segregated schools within the system are not also the result of intentionally segregative actions."). All of the Supreme Court's strict scrutiny decisions under the equal protection

---

**3.** As originally proposed by the Judicial Conference and the Supreme Court, Rule 301 adopted the alternate approach, discussed *infra,* in which the party against whom the presumption is raised must overcome the presumption by a preponderance of the evidence. *See* 1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE, ¶ 301 (1992); *Rules of Evidence for United States Courts and Magistrates,* 56 F.R.D. 183, 208 (1972). Con-

gress modified the Supreme Court's proposal to reflect the current Rule 301. However, "[t]he Rule merely defines the term 'presumption.' It in no way restricts the authority of a court ... to change the customary burdens of persuasion in a manner that otherwise would be permissible." *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 403 n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667, 676 n. 7 (1983).

clause have utilized this same rationale, fully described in the order. Thus, the Third District will be invalid unless the defendants can "demonstrate/justify/show/establish" that it was narrowly tailored to achieve a compelling governmental interest. Therefore, the risk of nonpersuasion *has* to be upon the defendants.